2015 ND 212

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Galen Paul RUFUS, Defendant and Appellant.**

No. 20140378.

Supreme Court of North Dakota.

Aug. 25, 2015.

Christene Ann Reierson, Minot, ND, for plaintiff and appellee.

William Kirschner, Fargo, ND, for defendant and appellant.

McEVERS, Justice.

[¶ 1]   Galen Paul Rufus appeals from a criminal judgment entered after a bench trial finding him guilty of human trafficking.  We affirm, concluding sufficient evidence supports the district court's verdict finding Rufus guilty of human trafficking.

I

[¶ 2]   Rufus responded to an advertisement posted on Craigslist under "person-

als > casual encounters" by a Ward County Deputy Sheriff using the undercover persona of "Chad Russo." The advertisement indicated Russo's girlfriend would be out of town for the weekend and her daughter wanted to make some money while her mother was gone. According to the advertisement, interested individuals could contact Russo for more details. Rufus responded to the advertisement requesting more information. Russo replied, informing Rufus that the girl was fourteen years old. Rufus asked Russo whether it would be illegal, as the girl was only fourteen, and requested more details. Russo acknowledged fourteen was illegal, but indicated he would not tell anyone. In two separate online Yahoo Messenger conversations, Russo and Rufus discussed the pricing for various sexual acts and a meeting place and time. Russo also sent Rufus a picture of "the girl." During Yahoo Messenger conversations, Rufus agreed to exchange two bags of marijuana, each worth $60, for one hour of time with the fourteen-year-old girl as follows:

> Russo: ... we meet tonight and I'll bring her with, she likes to hit it too ... we can work it out ... you bring something for me and she can take care of you
>
> Rufus: OK your [sic] on, what works for u [sic] guys
>
> . . . .
>
> Russo: 1 hr. with her do [sic] do whatever you want ... no freaky shit ... for two 60 bags ... sound right?
>
> . . . .
>
> Rufus: u[sic] got it, and im [sic] looking for something else just for a good time

Rufus and Russo agreed to meet in a parking lot at 9:00 p.m. Russo told Rufus to bring condoms if he wanted to have sexual intercourse with the girl. Rufus arrived and was arrested. The deputy found marijuana and money on Rufus.

The deputy also found a cooler containing beer, additional marijuana, one morphine pill, and one oxycodone pill in Rufus's vehicle.

[¶ 3] Rufus was charged with human trafficking. Rufus waived his right to a jury trial and, on May 28, 2014, the district court held a bench trial. The court issued its findings and verdict, convicting Rufus of human trafficking, a class AA felony. The district court entered judgment on October 21, 2014, sentencing Rufus to ten years of incarceration, with five years suspended. Rufus appealed, challenging the sufficiency of the evidence, and alternatively, whether the offense should be classified as a class AA felony.

## II

[¶ 4] Rufus argues the evidence is insufficient to sustain the district court's finding that he committed the crime of human trafficking. Specifically, Rufus contends (1) this Court should review both the facts and law under a de novo standard of review; (2) the district court's findings are flawed; (3) the elements of the crime of human trafficking do not include making a date with a pimp to possibly have sex with an underage prostitute; and (4) his actions do not constitute an attempt to commit a crime.

### 1. Standard of Review

[¶ 5] Rufus argues this Court should review both the facts and law under a de novo standard of review because only one individual, a law enforcement officer, testified at trial and all of the evidence in the record that was available to the district court is also available to this Court on appeal.

[¶ 6] The applicable standard of review for a criminal conviction resulting from a trial is as follows:

In an appeal challenging the sufficiency of the evidence, we look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction. A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt. In considering a sufficiency of the evidence claim, we do not weigh conflicting evidence, or judge the credibility of witnesses.

*State v. Corman*, 2009 ND 85, ¶ 8, 765 N.W.2d 530. This Court's "standard of review for a criminal trial before the district court without a jury is the same as a trial with a jury." *Id.*

[¶ 7] Rufus presents no persuasive authority in support of his argument that this Court should apply a de novo standard of review to the facts of this case. "The task of weighing the evidence and judging the credibility of witnesses belongs *exclusively* to the trier of fact, and we do not reweigh credibility or resolve conflicts in the evidence." *Greywind v. State*, 2004 ND 213, ¶ 22, 689 N.W.2d 390 (emphasis added). In a bench trial, the judge is the trier of fact, and the judge makes determinations of credibility. *State v. Barendt*, 2007 ND 164, ¶ 18, 740 N.W.2d 87. Although this Court reviews the evidence in the record on appeal, this Court does not make independent determinations of credibility of witnesses or other evidentiary weight. *See id.* at ¶ 21. Instead, we "look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction." *Corman*, 2009 ND 85, ¶ 8, 765 N.W.2d 530. Our standard of review does not vary depending on how much evidence in the form of testimony was presented to the district court, and we are not persuaded to adopt such an inconsistent, variable standard. We decline Rufus's invitation to stray from our longstanding standard of review for a challenge to the sufficiency of the evidence to sustain a conviction.

## 2. District Court's Findings

[¶ 8] Rufus argues that some of the district court's findings are not supported by the evidence. According to Rufus, the district court erroneously found Rufus suggested the trade of marijuana for sexual services from the girl. Rufus contends the evidence presented shows that Russo initially made the suggestion. Rufus also asserts the district court failed to note that Rufus did not have any condoms with him or in his vehicle at the time of his arrest. Rufus contends this fact was important because Russo told Rufus to bring condoms if he wanted to have sexual intercourse with the girl. According to Rufus, his failure to bring a condom to the meeting place shows he did not intend to engage in sexual intercourse with the girl.

[¶ 9] In regard to reviewing a district court's findings of fact made during a bench trial, this Court has stated:

Although in all civil actions tried to the court without a jury the trial court is required to "find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment" [Rule 52(a) of the North Dakota Rules of Civil Procedure], no such requirement exists in a criminal setting in regard to the ultimate determination of guilt or innocence. Likewise, our court's function differs in civil and criminal appeals. In civil appeals we do not set aside a finding of fact unless it is clearly erroneous. Rule

52(a), N.D.R.Civ.P. On the other hand, in reviewing a judgment of conviction in a criminal appeal to determine whether or not the evidence is sufficient to establish guilt beyond a reasonable doubt, our duty is to determine whether or not there is substantial evidence to warrant a conviction. *E.g., State v. Manke,* 328 N.W.2d 799, 805 (N.D.1982); *State v. Engebretson,* 326 N.W.2d 212, 215 (N.D. 1982); *State v. Rieger,* 281 N.W.2d 252, 254 (N.D.1979); *State v. Steele,* 211 N.W.2d 855, 870 (N.D.1973).

*State v. Hartleib,* 335 N.W.2d 795, 797 (N.D.1983). "In a criminal case tried to the court without a jury, the court is not required to make findings of fact. It either finds the defendant guilty or not guilty in the same[ ] manner as a jury." *State v. Berger,* 235 N.W.2d 254, 263 (N.D. 1975). "Accordingly, this Court is not limited to the reasons a trial court gives for a finding of guilt. Instead, we consider the entire record to decide whether substantial evidence exists to support the conviction." *State v. Steiger,* 2002 ND 79, ¶ 8, 644 N.W.2d 187.

[¶ 10] Rufus's argument is misguided. We need not consider whether the district court made flawed factual findings because we are not limited by the district court's findings. Instead, we look to the evidence and reasonable inferences most favorable to the verdict to ascertain whether there is sufficient evidence to warrant a conviction. *Corman,* 2009 ND 85, ¶ 8, 765 N.W.2d 530.

### 3. Sufficiency of the Evidence

[¶ 11] Rufus argues insufficient evidence supports the verdict because the elements of the crime of human trafficking do not include making a date with a pimp to possibly have sex with an underage prostitute. Rufus also argues there is insufficient evidence to show he would have *caused* the fourteen-year-old girl to engage in sexual conduct with him. Finally, Rufus argues there is insufficient evidence to show he completed a substantial step toward committing the crime of human trafficking or that he had the requisite intent to do so.

[¶ 12] Rufus's arguments regarding whether his conduct falls within the meaning of human trafficking involve interpreting statutory language. "The interpretation of a statute is a question of law, which is fully reviewable on appeal." *State v. Brossart,* 2015 ND 1, ¶ 23, 858 N.W.2d 275. At the time of Rufus's arrest, N.D.C.C. 12.1–40–01(1) (2009)[1] provided:

1. A person is guilty of human trafficking if the person:

   a. Benefits financially or receives anything of value from knowing participation in human trafficking; or

   b. Promotes, recruits, entices, harbors, transports, provides, or obtains by any means, or *attempts to* promote, recruit, entice, harbor, transport, provide, or *obtain* by any means, *another person, knowing that the person will be subject to human trafficking.*

(Emphasis added.) " 'Human trafficking' means labor trafficking or sex trafficking."

---

**1.** Chapter 12.1–40, N.D.C.C., was repealed on July 1, 2015, when N.D.C.C. 12.1–41 was enacted. Our analysis in this decision solely reflects the statutes included in N.D.C.C. ch. 12.1–40, as in effect at the time Rufus committed the offense. *See* N.D.C.C. 1–02–10; *State v. Flatt,* 2007 ND 98, ¶ 9, 733 N.W.2d 608 (stating we do not generally apply statutes retroactively to a cause of action that arose prior to the effective date of the statute); *see generally State v. Goodbird,* 344 N.W.2d 483, 487 (N.D.1984) (remanding to the district court to apply the sentencing statute in effect at the time of the commission of the offense, rather than the statute in effect at the time of the sentence).

N.D.C.C. 12.1–40–02(3) (2009). "Sex trafficking" is defined as:

the promotion, recruitment, transportation, transfer, harboring, enticement, provision, obtaining, or receipt of a person by any means, whether a United States citizen or foreign national, for the purpose of:

a. Causing the person or another to engage in sexual acts or sexual conduct in violation of chapter 12.1–20; or

b. Violating chapter 12.1–27.1, 12.1–27.2, or 12.1–29.

N.D.C.C. 12.1–40–02(5) (2009). Several sections of chapter 12.1–20 involve sexual acts or conduct with minors. *See* N.D.C.C. 12.1–20–03(2)(a), 12.1–20–03.1, 12.1–20–05, 12.1–20–05.1. The district court applied the gross sexual imposition statute, N.D.C.C. 12.1–20–03(2)(a), to the charges. A person violates N.D.C.C. 12.1–20–03(2)(a) when the person engages in a sexual act with another, or causes another to engage in a sexual act, if the victim is less than fifteen years old. In this case, the information charged Rufus as follows:

The defendant promoted, recruited, enticed, harbored, transported, provided, or obtained by any means, or attempted to promote, recruit, entice, harbor, transport, provide, or obtain by any means, another person, knowing that the person will be subject to human trafficking and the person subject to human trafficking was less than eighteen years of age, to wit: the defendant, Galen Paul Rufus, attempted to obtain by any means, a 14 year old female, knowing that the 14 year old female would be subject to human trafficking by causing the 14 year old female to engage in sexual acts or sexual conduct. Said offense is a CLASS AA FELONY.

[¶ 13] The district court found Rufus guilty of the crime of human trafficking, beyond a reasonable doubt, finding Rufus attempted to obtain a fourteen-year-old girl for illegal sexual activity. The district court also found Rufus bargained with another adult for the sexual services of a fourteen-year-old girl, agreeing to exchange a quantity of marijuana for an hour with the fourteen-year-old girl, to do whatever he wanted. The district court found Rufus knew the girl was only fourteen years old and that he was purchasing her for sexual activity, as various sexual activities and their prices were discussed. The district court found Rufus knew his actions would be illegal. The district court also found Rufus took a substantial step toward attempting the crime of human trafficking, by arriving at the agreed meeting place, at the arranged time, and bringing with him the agreed medium of exchange, a quantity of marijuana. The district court concluded N.D.C.C. 12.1–40–01(1)(b) (2009) applies to both suppliers and purchasers.

[¶ 14] Rufus argues he did not attempt to obtain a fourteen-year-old girl, but rather attempted to obtain sexual services from a fourteen-year-old girl. As such, Rufus argues his conduct does not constitute "obtaining" a person, under N.D.C.C. 12.1–40–01(1)(b) (2009).

[¶ 15] When interpreting a statute, "we apply the rules of statutory construction and look at the language of the . . . statute to determine its meaning." *State v. Kopperud*, 2015 ND 124, ¶ 4, 863 N.W.2d 852. The primary goal is to ascertain the legislative intent. *State v. Hafner*, 1998 ND 220, ¶ 10, 587 N.W.2d 177. "Words of a statute are given their plain, ordinary, and commonly understood meaning unless a contrary intention plainly appears." *State v. Wetzel*, 2008 ND 186, ¶ 4, 756 N.W.2d 775 (citing N.D.C.C. 1–02–02). "If the language of a statute is clear and unambiguous, 'the letter of the statute is not to be disregarded under the pretext of

pursuing its spirit.' " *Id.* (quoting N.D.C.C. 1–02–05). Here, neither party argues N.D.C.C. 12.1–40–01 (2009) is ambiguous.

[¶ 16] This Court has not previously interpreted N.D.C.C. 12.1–40–01 (2009). Although federal law is not binding on our interpretation of state law, we can look to federal law for guidance when it is helpful and sensible to do so. *See Schweigert v. Provident Life Ins. Co.,* 503 N.W.2d 225, 227 (N.D.1993) (noting we can rely on federal law when it is helpful and sensible to do so). In *United States v. Jungers,* the Eighth Circuit Court of Appeals interpreted 18 U.S.C. § 1591, a federal human trafficking statute, which includes similar language to N.D.C.C. 12.1–40–01 and 12.1–40–02(3) (2009), in the context of factual circumstances similar to this case. 702 F.3d 1066 (8th Cir.2013).

[¶ 17] In *Jungers,* undercover state and federal law enforcement officers placed online advertisements pretending to be a man offering his girlfriend's underage daughters for sexual acts, while his girlfriend was out of town. 702 F.3d at 1067. Two individuals, Jungers and Bonestroo, each responded to the advertisements. *Id.* Jungers exchanged emails with law enforcement, discussing the girls, their ages, and the rates. *Id.* Law enforcement sent Jungers an age-regressed photograph of adult female officers. *Id.* After receiving the photograph, Jungers indicated he wanted to spend an hour with an eleven-year-old girl, so she could perform oral sex on him. *Id.* at 1067–68. Jungers traveled from Sioux City, Iowa to an agreed upon location, a house in Sioux Falls, South Dakota. *Id.* at 1068. Upon arrival, Jungers confirmed he would pay to receive oral sex from the eleven-year-old girl, but stated he preferred to take the girl with him because he was uncomfortable engaging in the act at the house. *Id.* Bonestroo also exchanged e-mails with law enforcement discussing the underage girls and the rates for sex with them. *Id.* Bonestroo agreed to pay $200 to have sex with fourteen-year-old twin girls for an hour, after receiving an age-regressed photograph. *Id.* Bonestroo arrived at the agreed upon location and showed the officer the money he brought to complete the transaction. *Id.* In their respective cases, Jungers and Bonestroo were each arrested and charged with attempted commercial sex trafficking, under 18 U.S.C. §§ 1591(a) and 1594(a). *Id.* At the time of the case, 18 U.S.C. § 1591(a) provided a person is guilty of sex trafficking if the person "recruits, entices, harbors, transports, provides, *obtains,* or maintains by any means a person ... knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, [or] coercion ... will be used to cause the person to engage in a commercial sex act." *Id.* at 1070 (emphasis added.) Section 1594(a) provided: "Whoever attempts to violate section ... 1591 shall be punishable in the same manner as a completed violation of that section." In each case, the federal district court acquitted the defendant of the human trafficking charge and the government appealed. *Jungers,* 702 F.3d at 1068. On appeal, the government argued 18 U.S.C. § 1591 applied to purchasers of sex acts from minors, in addition to suppliers. *Id.*

[¶ 18] The court of appeals reversed and concluded the plain meaning of 18 U.S.C. § 1591 punished both suppliers and purchasers of commercial sex acts. *Id.* at 1075–76. In so holding, the court analyzed the natural meaning of "obtain":

> The defendants maintain this appeal turns on the meaning of the term "obtains." Section 1591 does not define the term "obtains" or any of the other verbs listed. "When a word is not defined by statute, we normally construe it in accord with its ordinary or natural mean-

ing." *Smith v. United States*, 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 158 [138] (1993). The defendants acknowledge "obtains," by itself, is "an incredibly broad" verb, devoid of any inherent limitation on the actor or his object. *See United States v. Ramos–Arenas*, 596 F.3d 783, 787 (10th Cir.2010) (defining obtains to include "attaining or acquiring a thing of value in any way," without limiting who ultimately receives it) (quoting *Black's Law Dictionary* 1078 (6th ed. 1990) ("To get hold of by effort; to get possession of; to procure; to acquire, in any way.")). Another dictionary defines obtain to mean "[t]o come into the possession of; to procure; to get, acquire, or secure." *Oxford English Dictionary Online* (September 2012) http://oed.com/view/Entry/130002 (November 2, 2012). The ordinary and natural meaning of "obtains" and the other terms Congress selected in drafting § 1591 are broad enough to encompass the actions of both suppliers and purchasers of commercial sex acts.

*Id.* at 1071. After concluding 18 U.S.C. § 1591 applied to both purchasers and suppliers of sex trafficking, the court analyzed whether the defendants' conduct violated §§ 1591 and 1594(a). *Id.* at 1075–76. Specifically, it concluded Jungers's attempt to gain exclusive possession, custody, and control of the underage girl, by taking her somewhere else to engage in commercial sex, supported his conviction for attempted sex trafficking. *Id.* Regarding Bonestroo, the court stated:

> Bonestroo presents a closer case. Bonestroo concedes the term "obtain" is "incredibly broad" and can mean acquiring, controlling, or possessing something *"for a short period of time,"* but asserts there is no evidence he attempted to obtain or possess a minor because he was only attempting to pay for sex. We disagree.

> Bonestroo arranged with undercover officers to acquire custody and control of what he believed to be fourteen-year-old twin girls without anyone else present for an hour. In negotiating the transaction, Bonestroo asked "How much for the twins." Bonestroo then agreed to pay $200 to get the girls alone with him in a room so he could do anything he wanted to them short of visible physical abuse. The jury reasonably found Bonestroo attempted to obtain the girls as that term is used in §§ 1591 and 1594(a).

*Id.* at 1076 (emphasis added).

[¶ 19] Similar to the statute in *Jungers*, the word "obtain" is not defined by statute. As such, we look to the plain and ordinary meaning of the word. The word "obtain" is defined as "to hold onto, possess" or "to gain or attain usu. by planned action or effort." *Merriam–Webster's Collegiate Dictionary* 857 (11th ed.2005). We conclude, consistent with *Jungers*, the plain meaning of "obtain," in the context of N.D.C.C. 12.1–40–01(1) (2009), is broad enough to encompass acquiring temporary custody of a person for the purpose of engaging in commercial sex acts with that person.

[¶ 20] Rufus does not dispute that N.D.C.C. 12.1–40–01(1) (2009) applies to purchasers of sexual services from human trafficking victims. Rather, he argues there is a distinction between trying to obtain commercial sexual services and trying to obtain the girl. The negotiations between Rufus and Russo are similar to those made by Bonestroo in *Jungers*. However, the Eighth Circuit Court of Appeals was not persuaded by this argument, and neither are we. Like Bonestroo, in *Jungers*, law enforcement discussed with Rufus that he could take the fourteen-year-old girl into a separate bedroom, alone, for an hour. Although Russo in-

formed Rufus he would be in another room nearby for the girl's safety, Rufus sought to purchase from Russo an hour alone in a separate room with a fourteen-year-old girl in order to engage in sexual acts with her. Based on these facts, it was reasonable for the district court to conclude Rufus attempted to acquire temporary custody of a fourteen-year-old girl for the purpose of engaging in commercial sexual acts.

### 4. Attempt to Commit

[¶ 21] Rufus next argues his conduct does not constitute an attempt to commit a crime because no evidence establishes he acted with the culpability required for commission of the crime or that he engaged in a substantial step in committing the offense. Rufus was charged with attempting to obtain the girl under N.D.C.C. 12.1–40–01 (2009), and not with the separate crime of criminal attempt under N.D.C.C. 12.1–06–01. In support of his argument, Rufus relies on *State v. Stensaker*, which provides:

> A person is guilty of *criminal attempt* if, acting with the kind of culpability otherwise required for commission of a crime, he intentionally engages in conduct which, in fact, constitutes a substantial step toward commission of the crime. A 'substantial step' is any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime.

2007 ND 6, ¶ 12, 725 N.W.2d 883 (citing N.D.C.C. 12.1–06–01(1)) (emphasis added). The State has not disputed that it had the burden to prove that Rufus engaged in conduct which constitutes a substantial step toward the commission of the crime despite the fact that the offense was not charged under N.D.C.C. 12.1–06–01. Rather, the State argues the evidence shows

Rufus took a substantial step toward committing the crime of human trafficking.

[¶ 22] Assuming the State must prove a substantial step toward commission of the crime, for an individual to be found guilty of human trafficking by attempting to obtain a person, the evidence must show the individual (1) acted with the kind of culpability required for commission of the crime of human trafficking and (2) intentionally engaged in conduct which constitutes a substantial step toward commission of human trafficking. Because N.D.C.C. 12.1–40–01 (2009) does not specify a requisite culpability, we apply the culpability of willfully to element one of the attempt definition. *See* N.D.C.C. 12.1–02–02(2) ("If a statute or regulation thereunder defining a crime does not specify any culpability and does not provide explicitly that a person may be guilty without culpability, the culpability that is required is willfully."). A person engages in conduct willfully "if he engages in the conduct intentionally, knowingly or recklessly." N.D.C.C. 12.1–02–02(1)(e). To satisfy the second element of the substantial step, "the culpability level for conduct constituting a substantial step toward the commission of the crime is set as the highest level of culpability—'intentionally.' " *Stensaker*, 2007 ND 6, ¶ 12, 725 N.W.2d 883.

[¶ 23] Having interpreted the statutory meaning of "attempt" and "obtain" in the context of N.D.C.C. 12.1–40–01 (2009), we turn to the application of the statute to the facts of this case. We begin with the first requirement of attempt that Rufus acted with the kind of culpability required for commission of the crime of human trafficking. Rufus' intent to commit the crime of human trafficking, by attempting to obtain a fourteen-year-old girl, can be inferred from his initial response to Russo's advertisement and his continued communication with Russo via

Yahoo Messenger regarding information about the girl, including her age, the rates for specific sexual acts, and the details about when and where they would meet, so Rufus could engage in the acts with the girl. This conduct meets the statutory definition of willfully.

[¶ 24] We next consider the second element that Rufus intentionally engaged in conduct which constitutes a substantial step toward commission of human trafficking. Rufus downloaded Yahoo Messenger to continue communicating with Russo regarding the girl, bartered over the rates for the girl, agreed to the transaction, appeared at the agreed upon meeting location at the appropriate time, and brought with him the agreed medium of exchange, marijuana. Rufus disputes that this conduct qualifies as a substantial step toward the commission of human trafficking. Rufus's agreement to exchange a quantity of marijuana for an hour alone with the girl, combined with his showing up at the agreed upon meeting location with the medium of exchange, qualifies as sufficient evidence of intentional conduct to show a substantial step toward attempting to obtain the fourteen-year-old girl for the purpose of engaging in sexual acts.

[¶ 25] Rufus additionally argues he would not have *caused* the girl to engage in sexual activities with him because Russo initially placed the advertisement and Rufus solely responded to it. Rufus essentially contends someone other than himself initially caused the girl to offer sexual services to purchasers, specifically, either Russo would have forced the girl to engage in sexual acts with Rufus or the girl would have done so willingly.

[¶ 26] The information provides: "Rufus, attempted to obtain by any means a 14 year old female, knowing that the 14 year old female would be subject to human trafficking *by causing the 14 year old female to engage in sexual acts or sexual conduct.*" The definition of cause is "[t]o bring about or effect." *Black's Law Dictionary* 235 (8th ed.2004). Under N.D.C.C. 12.1–02–05, "[c]ausation may be found where the result would not have occurred but for the conduct of the accused *operating either alone or concurrently with another cause,* unless the concurrent cause was clearly sufficient to produce the result and the conduct of the accused clearly insufficient."

[¶ 27] In this case, the context of the Yahoo Messenger conversation between Russo and Rufus shows Rufus knew and understood he was bartering over the cost of purchasing one hour alone with the girl for sexual acts. The girl would not have been able to provide sexual services to Rufus, *but for* his participation by initially responding to the advertisement, continuing to communicate with Russo regarding the logistics and rates, and appearing at the agreed upon meeting location. As such, we conclude sufficient evidence shows that Rufus knew the fourteen-year-old girl would be subject to human trafficking by *causing* the fourteen-year-old girl to engage in sexual acts or sexual conduct.

[¶ 28] While Rufus urges us to reweigh the evidence in conflict in his favor, sufficient evidence in the record exists to support the district court's verdict, finding Rufus guilty of attempting to obtain by any means, a fourteen-year-old girl, knowing that she would be subject to human trafficking, by causing her to engage in sexual acts or sexual conduct.

### III

[¶ 29] Alternatively, Rufus argues, if we affirm his human trafficking conviction, then we should reverse its classification as a class AA felony because the

fourteen-year-old girl is a fictitious victim. Rufus argues the district court misunderstood his argument, because the district court thought he was arguing impossibility to commit the crime, when he was only arguing the lack of a real person goes to the severity of the charge. Rufus cites no authority, other than the statute itself, N.D.C.C. 12.1–40–01(2).

[¶ 30] Section 12.1–40–01(2) (2009), N.D.C.C., provides: "An offense under this section is a class AA felony if the person subject to human trafficking is less than eighteen years of age. Otherwise, the offense is a class A felony."

[¶ 31] Because *attempting* to obtain a person is included as conduct prohibited by N.D.C.C. 12.1–40–01 (2009), we apply the offense classification authorized by the statute. Rufus does not dispute he could be convicted of a crime without a real person as a victim. Rufus seems to argue we should stray from the classification the Legislative Assembly authorized for violation of the statute and, instead, apply a lower classification, because the victim was fictitious. However, we do not have such authority, and are instead bound by the offense classification that the Legislative Assembly authorized. *See, e.g., State v. Foreid*, 2009 ND 41, ¶ 10, 763 N.W.2d 475 ("When a statute specifically states the classification of an offense, the State cannot change the required classification when it charges an individual with committing the offense."). Further, N.D.C.C. 12.1–01–02(2), provides an objective of title 12.1 is: "By definition and grading of offenses, to define the limits and systematize the exercise of discretion in punishment and to give fair warning of what is prohibited and of the consequences of violation." Rufus's argument has no merit and disregards that his intent was to obtain a real person for an hour of sexual activity, and he attempted to do so. *See United States v. Wolff,*

No. 14–3856, slip op. at 7 n. 7, 796 F.3d 972, 976, 2015 WL 4730950 (8th Cir. Aug. 11, 2015) (analyzing sentencing for attempted child sex trafficking under 18 U.S.C. § 1591 (2012) and concluding the lack of an "actual" minor victim does not affect the analysis where the punishment for a substantive violation and an attempt are the same). Although the victim was fictitious, Rufus was informed by Russo that the person he was attempting to obtain was a fourteen-year-old girl. Because we concluded sufficient evidence exists to support Rufus's human trafficking conviction, we are bound by the Legislative Assembly's enacted offense classification for violating the human trafficking statute, even if the fourteen-year-old girl he was attempting to obtain for sex did not exist. As such, we conclude the district court properly classified Rufus's conviction for violating N.D.C.C. 12.1–40–01 (2009) as a class AA felony.

IV

[¶ 32] We affirm, concluding sufficient evidence supports the district court's judgment finding Rufus guilty of human trafficking for attempting to obtain a fourteen-year-old girl knowing she would be subject to human trafficking.

[¶ 33] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.