# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 29

State of North Dakota,                                          Plaintiff and Appellee

v.

Julian Bearrunner,                                          Defendant and Appellant

No. 20180258

Appeal from the District Court of Morton County, South Central Judicial District, the Honorable Thomas J. Schneider, Judge.

AFFIRMED IN PART AND REVERSED IN PART.

Opinion of the Court by Jensen, Justice.

Chase R. Lingle, Assistant State's Attorney, Mandan, ND, for plaintiff and appellee.

Benjamin M. Stoll (argued), Washington, DC, Russell J. Myhre (appeared), Valley City, ND, and Thomas A. Dickson (on brief), Bismarck, ND, for defendant and appellant.

**Jensen, Justice.**

[¶1]   Julian Bearrunner appeals from a criminal judgment entered following convictions of class A misdemeanor criminal trespass and class A misdemeanor engaging in a riot.  We affirm Bearrunner's conviction of criminal trespass and reverse the conviction of engaging in a riot.

I.

[¶2]   On February 1, 2017, a large group of individuals, including Bearrunner, gathered in a pasture near the Dakota Access Pipeline to participate in protest activities.  The pasture was owned by Energy Transfer Partners.  The pasture was separated from the adjacent highway by a barbed wire fence.

[¶3]   Law enforcement arriving on the scene observed an open gate and that the road leading from the highway into the pasture through the open gate had been plowed free of snow.  Law enforcement agents entered the pasture, notified the protesters they were on private property, and informed the protesters they were required to leave.  In response, the protesters locked arms in a circle, refused to leave the pasture, and had to be forcefully separated from each other in order to be arrested.  Bearrunner was arrested along with the other protesters and charged with class A misdemeanor criminal trespass and with class A misdemeanor engaging in a riot.  Following a bench trial, Bearrunner was found guilty of both charges.

[¶4]   On appeal, Bearrunner argues the district court misinterpreted the criminal trespass statute by finding that the pasture was "so enclosed as manifestly to exclude intruders" as required to convict him of the trespassing charge.  Bearrunner also argues the district court erred in finding that his conduct was "tumultuous and violent" as required to convict him of the engaging in a riot charge.

II.

1

[¶5]    Under N.D.C.C. § 12.1-22-03(2)(b), "[a]n individual is guilty of a class A misdemeanor if, knowing that that individual is not licensed or privileged to do so, the individual . . . [e]nters or remains in any place so enclosed as manifestly to exclude intruders." "Statutory interpretation is a question of law, fully reviewable on appeal." *Agri Indus., Inc. v. Franson*, 2018 ND 156, ¶ 6, 915 N.W.2d 146. The primary purpose of statutory interpretation is to determine legislative intent. *Estate of Elken*, 2007 ND 107, ¶ 7, 735 N.W.2d 842. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02.

[¶6]    Bearrunner argues the district court misinterpreted the phrase "so enclosed as manifestly to exclude intruders" and asserts that, as a matter of law, the fence in question cannot be found to be so enclosed that it manifestly excludes intruders. Bearrunner also claims, as a matter of law, a fence with an open gate may not be considered so enclosed as manifestly to exclude intruders. The word "manifestly" is not defined by N.D.C.C. § 12.1-22-03. As such, this Court looks to the plain, ordinary, and commonly understood meaning of the word to determine its meaning. N.D.C.C. § 1-02-02. The word "manifest" is defined as "readily perceived by the senses" or "easily understood or recognized by the mind: obvious." *Merriam-Webster's Collegiate Dictionary* 755 (11th ed. 2005). A plain reading of the statute indicates the fence must be enclosed in a manner that obviously excludes intruders before an individual is guilty of trespass. Fences differ in size, materials of construction, and purpose. One fence may clearly communicate that trespassers are not allowed while another fence may not. Accordingly, whether a fence is so enclosed that it obviously excludes intruders is a finding of fact, not a matter or law.

[¶7]    When reviewing a district court's findings of fact made during a bench trial, this Court has stated, "in reviewing a judgment of conviction in a criminal appeal to determine whether or not the evidence is sufficient to establish guilt beyond a reasonable doubt, our duty is to determine whether or not there is substantial evidence

2

to warrant a conviction." *State v. Rufus*, 2015 ND 212, ¶ 9, 868 N.W.2d 534 (quoting *State v. Hartleib*, 335 N.W.2d 795, 797 (N.D. 1983)). "[T]his Court is not limited to the reasons a trial court gives for a finding of guilt. Instead, we consider the entire record to decide whether substantial evidence exists to support the conviction." *State v. Steiger*, 2002 ND 79, ¶ 8, 644 N.W.2d 187. Substantial evidence to support a conviction exists when an inference can be drawn in favor of conviction when looking at the evidence in the light most favorable to the verdict. *State v. Barth*, 2005 ND 134, ¶ 15, 702 N.W.2d 1.

[¶8]    Here, the district court had access to photos of the fence, gate, and surrounding area. The fence was constructed of barbed wire and separated the pasture from the highway. Bearrunner attempts to frame the gate issue as if there is no factual dispute regarding the gate being open when protesters arrived in the area. However, the State elicited testimony during trial suggesting the protesters potentially opened the gate. There was also testimony insinuating that protesters had previously torn down signs prohibiting trespassing from the fence. Even if one assumes the gate was open when Bearrunner arrived, we decline to hold as a matter of law that an open gate is an invitation to outsiders to gather on private property.

[¶9]    After entering the pasture, the protesters engaged in an extraordinary intrusion by constructing tepees and building a sizeable bonfire. The protesters also refused to leave when informed they were on private property. These actions, while not dispositive, tend to show an intention to trespass in order to convey the group's political point of view. This leads to an inference that Bearrunner and the protesters were aware the fence was intended to exclude intruders and chose to disregard their obvious exclusion in an act of civil disobedience. The district court believed the fence was so enclosed as manifestly to exclude intruders and substantial evidence exists to support this factual finding. We affirm the conviction of criminal trespass.

[¶10] Bearrunner argues that a barbed wire fence cannot satisfy the enclosure requirement of the class A misdemeanor charge because the same conduct would be

a class B misdemeanor under N.D.C.C. §§ 20.1-01-17 and 20.1-01-18. Under N.D.C.C. § 20.1-01-17, a landowner may give notice that hunting on their land is prohibited. If proper notification is posted, an intruder may be charged with a class B misdemeanor for the first violation and a class A misdemeanor for subsequent violations. This may have the appearance of creating a situation where trespassers engaged in hunting activities are privileged over those who trespass for non-hunting purposes. However, N.D.C.C. § 20.1-01-17 does not create an exception to N.D.C.C. § 12.1-22-03. Instead, it creates a separate offense imposing a separate penalty that includes the loss of hunting privileges. *See* N.D.C.C. § 20.1-01-26; *see also State v. Moos*, 2008 ND 228, ¶¶ 13, 21, 758 N.W.2d 674 (explaining limitations on multiple punishments where two statutory offenses apply to the same conduct); *Gray v. North Dakota Game & Fish Dep't*, 2005 ND 204, ¶ 14, 706 N.W.2d 614.

III.

[¶11] Under N.D.C.C. § 12.1-25-03, a person is guilty of a class A misdemeanor if the person engages in a riot. A riot is defined as "a public disturbance involving an assemblage of five or more persons which by tumultuous and violent conduct creates grave danger of damage or injury to property or persons or substantially obstructs law enforcement or other government function." N.D.C.C. § 12.1-25-01. Bearrunner challenges his conviction of engaging in a riot and argues the district court misinterpreted the phrase "tumultuous and violent conduct" as well as the elements of engaging in a riot.

[¶12] It is undisputed that after being informed they were required to leave the private property the protesters locked arms in a circle, refused to leave the pasture, and law enforcement had to use physical force to separate the protesters prior to their arrest. Bearrunner argues these actions cannot be considered "tumultuous and violent conduct" because they are merely passive resistance. Neither N.D.C.C. § 12.1-25-03 nor N.D.C.C. § 12.1-25-01 defines "tumultuous and violent conduct." As such, this Court looks to the plain, ordinary, and commonly understood meaning of the words.

4

N.D.C.C. § 1-02-02. The word "tumultuous" is defined as "marked by violent or overwhelming turbulence or upheaval." *Merriam-Webster's Collegiate Dictionary* 1347 (11th ed. 2005). The word "violent" is defined as "extreme force or sudden intense activity." *Merriam-Webster's Collegiate Dictionary* 1396 (11th ed. 2005). The related definition of the word "violence" is "exertion of physical force so as to injure or abuse." *Merriam-Webster's Collegiate Dictionary* 1396 (11th ed. 2005). The terms "tumultuous and violent" are not ambiguous and do not require this Court's interpretation. Whether conduct is "tumultuous and violent" is a factual determination better suited to the district court where there is an opportunity to make evidentiary observations and credibility determinations.

[¶13] Here, even when viewing the evidence in the light most favorable to the verdict, the facts fall short of engaging in a riot. While we decline to hold that passive resistance to law enforcement can never be considered riotous, the conduct here cannot be considered violent. The State focuses on the term "force" being common to all definitions of violence and claims the protesters' actions were forceful enough to qualify as violent. However, Bearrunner's act of locking arms and resisting arrest with other protesters does not rise to the commonly understood definition of violence. Here, it was law enforcement that was required to use force to overcome the protesters' non-compliance. The situation presented in this case is more akin to preventing arrest or discharge of other duties under N.D.C.C. § 12.1-08-02. Bearrunner's conviction of engaging in a riot is not supported by substantial evidence.

IV.

[¶14] Upon reviewing the record, we conclude Bearrunner's conviction of class A criminal trespass under N.D.C.C. § 12.1-22-03(2)(b) is supported by substantial evidence. However, there was not substantial evidence that Bearrunner engaged in violent conduct sufficient to support a conviction for the class A misdemeanor of engaging in a riot. We affirm the judgment with respect to the class A misdemeanor

5

criminal trespass and reverse with respect to the class A misdemeanor engaging in a riot.

[¶15]   Jon J. Jensen
        Jerod E. Tufte
        Daniel J. Crothers
        William A. Neuman, S.J.
        Gerald W. VandeWalle, C.J.

[¶16]  The Honorable William A. Neumann, S.J., sitting in place of McEvers, J., disqualified.

6