# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

2022 ND 94

City of West Fargo, a political subdivision
of the State of North Dakota,                    Plaintiff and Appellee

v.

Mark Alexander McAllister,                    Defendant and Appellant

and

Alerus Financial, N.A.; and all other
persons unknown claiming an estate
or interest in or lien or encumbrance
upon the real property described in
the Complaint, whether as heirs,
devisees, personal representatives,
creditors or otherwise,                                    Defendants

No. 20210360

Appeal from the District Court of Cass County, East Central Judicial District,
the Honorable Susan L. Bailey, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice.

Christopher M. McShane, West Fargo, ND, for plaintiff and appellee.

Jonathan T. Garaas, Fargo, ND, for defendant and appellant.

**Jensen, Chief Justice.**

[¶1]   Mark McAllister appeals from an amended judgment of condemnation allowing the City of West Fargo to use its eminent domain power to acquire a right of way across his property. We conclude the district court did not err in holding West Fargo was authorized to use quick-take eminent domain procedures for its sewage improvement project. We further conclude the court did not abuse its discretion in granting West Fargo's motion in limine to exclude testimony from trial that the taking impacted McAllister's property's conformance with the city's setback requirements. We affirm.

I

[¶2]   The relevant facts of this case are recited in *City of W. Fargo v. McAllister*, 2021 ND 136, ¶¶ 2-5, 962 N.W.2d 591:

> In August 2017, West Fargo passed a resolution determining it was necessary to construct a sewer improvement project. The project consisted of the design and installation of two sewer pipes between West Fargo and Fargo. To complete the project, West Fargo had to acquire a right of way across certain private property, including McAllister's.
>
> West Fargo sued McAllister, seeking to use its quick-take eminent domain power to acquire immediate possession of a right of way across McAllister's property. West Fargo appraised the compensation for the property rights obtained on McAllister's property at $36,000 and deposited that amount with the clerk of court. McAllister resisted, arguing West Fargo was prohibited from taking immediate possession of a right of way across his property. After an evidentiary hearing, the district court concluded West Fargo was entitled to take immediate possession of a right of way across McAllister's property.
>
> Before the trial on the issue of McAllister's just compensation, West Fargo moved to exclude testimony that the taking caused McAllister's property to become nonconforming under West Fargo City Ordinances based on front yard setback requirements. The district court granted the motion, concluding as

a matter of law that the easement obtained by West Fargo had no effect on the front yard setback requirements under the West Fargo City Ordinances and ordered that testimony relating to that issue would be excluded at trial.

The parties stipulated to the entry of a condemnation judgment in favor of West Fargo. West Fargo agreed to pay McAllister $36,000; however, the determination of McAllister's costs and disbursements, including attorney's fees and appraisal expenses, was reserved for a later date. The parties also stipulated to the entry of an order certifying the condemnation judgment as final under N.D.R.Civ.P. 54(b). The district court entered a condemnation judgment and certified the judgment as final under Rule 54(b).

[¶3] In the first appeal, because McAllister's costs and disbursements, including reasonable attorney's fees, had been left undecided, this Court concluded the district court abused its discretion by inappropriately certifying the condemnation judgment as final under N.D.R.Civ.P. 54(b). *McAllister*, 2021 ND 136, ¶¶ 12-13. The appeal was therefore dismissed without reaching the merits. *Id.* On remand the court entered an amended judgment of condemnation including an award of McAllister's attorney's fees and costs. Neither party has challenged the award of attorney's fees and costs.

II

[¶4] McAllister raises multiple legal issues contending the district court erred in concluding West Fargo was authorized to use quick-take eminent domain procedures under N.D.C.C. ch. 40-22 for its sewage improvement project.

[¶5] "Statutory interpretation is a question of law, fully reviewable on appeal." *Schmitz v. N. Dakota State Bd. of Chiropractic Exam'rs*, 2022 ND 52, ¶ 9, 971 N.W.2d 892 (quoting *State v. Bearrunner*, 2019 ND 29, ¶ 5, 921 N.W.2d 894). "The primary purpose of statutory interpretation is to determine legislative intent." *Id.* "Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears." *Id.*; *see* N.D.C.C. § 1-02-02.

[¶6] Our review of constitutional provisions is similar to our interpretation of statutory provisions. We have summarized our review of constitutional provisions as follows:

> When interpreting constitutional provisions, "we apply general principles of statutory construction." *State ex rel. Heitkamp v. Hagerty*, 1998 ND 122, ¶ 13, 580 N.W.2d 139 (quoting *Comm'n on Med. Competency v. Racek*, 527 N.W.2d 262, 266 (N.D. 1995)). We aim to give effect to the intent and purpose of the people who adopted the constitutional provision. *Id.* We determine the intent and purpose of a constitutional provision, "if possible, from the language itself." *Kelsh v. Jaeger*, 2002 ND 53, ¶ 7, 641 N.W.2d 100. "In interpreting clauses in a constitution we must presume that words have been employed in their natural and ordinary meaning." *Cardiff v. Bismarck Pub. Sch. Dist.*, 263 N.W.2d 105, 107 (N.D. 1978).
>
> "A constitution 'must be construed in the light of contemporaneous history—of conditions existing at and prior to its adoption. By no other mode of construction can the intent of its framers be determined and their purpose given force and effect.'" *Hagerty*, 1998 ND 122, ¶ 17, 580 N.W.2d 139 (quoting *Ex parte Corliss*, 16 N.D. 470, 481, 114 N.W. 962, 967 (1907)). Ultimately, our duty is to "reconcile statutes with the constitution when that can be done without doing violence to the language of either." *State ex rel. Rausch v. Amerada Petroleum Corp.*, 78 N.D. 247, 256, 49 N.W.2d 14, 20 (1951). Under N.D. Const. art. VI, § 4, we "shall not declare a legislative enactment unconstitutional unless at least four of the members of the court so decide."

*Sorum v. State*, 2020 ND 175, ¶¶ 19-20, 947 N.W.2d 382.

[¶7] Article I, section 16, of the North Dakota Constitution, states in relevant part:

> When the state or any of its departments, agencies or political subdivisions seeks to acquire right of way, it may take possession upon making an offer to purchase and by depositing the amount of such offer with the clerk of the district court of the county wherein the right of way is located. The clerk shall immediately notify the

3

owner of such deposit. The owner may thereupon appeal to the court in the manner provided by law, and may have a jury trial, unless a jury be waived, to determine the damages . . . .

This language adopted in 1956 "authorize[d] the legislature to enact 'quick take' condemnation procedures for the state and its departments, agencies, or political subdivisions." *Eberts v. Billings Cnty. Bd. of Comm'rs*, 2005 ND 85, ¶ 10, 695 N.W.2d 691; *see also Sauvageau v. Bailey*, 2022 ND 86, ¶ 13; *Johnson v. Wells Cnty. Water Res. Bd.*, 410 N.W.2d 525, 528-29 (N.D. 1987) (superseded by statute recognized by *Sauvageau*, at ¶ 18). "The 'quick take' authorization in N.D. Const. art. I, § 16 is not self-executing, and legislation is necessary to effectuate the quick take authority." *Eberts*, at ¶ 10.

[¶8] Section 40-22-01, N.D.C.C., provides municipalities with authority to defray the expense of certain types of improvements, including water supply and sewerage systems, by special assessments:

> Any municipality, upon complying with the provisions of this chapter, *may defray the expense* of any or all of the following types of improvements by special assessments:
> > 1. The construction of a water supply system, or a sewerage system, or both, or any part thereof, or any improvement thereto or extension or replacement thereof, including the construction and erection of wells, intakes, pumping stations, settling basins, filtration plants, standpipes, water towers, reservoirs, water mains, sanitary and storm sewer mains and outlets, facilities for the treatment and disposal of sewage and other municipal, industrial, and domestic wastes, and all other appurtenances, contrivances, and structures used or useful for a complete water supply and sewerage system.
>
> . . . .

(Emphasis added.) Section 40-22-05, N.D.C.C., provides an exception to eminent domain proceedings under N.D.C.C. ch. 32-15, *i.e.*, a quick-take procedure, when the interest sought for an improvement authorized under N.D.C.C. ch. 40-22 is a "right of way," stating in relevant part:

4

Whenever property required to make *any improvement authorized by this chapter* is to be taken by condemnation proceedings, the court, upon request by resolution of the governing body of the municipality making such improvement, shall call a special term of court for the trial of the proceedings and may summon a jury for the trial whenever necessary. The proceedings shall be instituted and prosecuted in accordance with the provisions of chapter 32-15, *except that when the interest sought to be acquired is a right of way* for the opening, laying out, widening, or enlargement of any street, highway, avenue, boulevard, or alley in the municipality, or *for the laying of any main, pipe, ditch, canal, aqueduct, or flume for conducting water, storm water, or sewage*, whether within or without the municipality, the municipality may make an offer to purchase the right of way and may deposit the amount of the offer with the clerk of the district court of the county wherein the right of way is located, *and may thereupon take possession of the right of way forthwith.* . . . The municipality may levy special assessments to pay all or any part of the judgment and at the time of the next annual tax levy may levy a general tax for the payment of the part of the judgment as is not to be paid by special assessment.

(Emphasis added.)

[¶9]   McAllister argues the phrase "right of way," as used in N.D. Const. art. I, § 16, and N.D.C.C. § 40-22-05, is restricted or limited only to highway purposes and incidental uses. To support his argument McAllister relies in part on *Tormaschy v. Hjelle*, 210 N.W.2d 100, 102-04 (N.D. 1973) (defining "right of way" in the relevant constitutional provision, as it relates to a roadway, to include a sewage lagoon in conjunction with sanitary facilities at an interstate highway rest area), and N.D.C.C. § 24-01-01.1(38) (defining "right of way" as "land, property, or interest therein, acquired for or devoted to highway purposes"). Nevertheless, while these definitions would necessarily apply in the context of N.D.C.C. title 24 and concern the highways, the definitions would not necessarily apply when a different meaning is plainly intended by a statute in another title. *See* N.D.C.C. § 1-01-09 ("Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs in the same or subsequent statutes, except when a contrary intention plainly appears.").

5

[¶10] West Fargo argues the quick-take procedure is not limited only to a right of way for highway purposes and the language of N.D.C.C. § 40-22-05 specifically contemplates a broader definition. West Fargo asserts that nothing in this section requires a sewage project to be a component of a road project and the statute specifically separates road projects and sewage projects with the word "or." West Fargo also notes this Court has previously suggested "right of way" may mean different things in different contexts. *See, e.g.*, *EOG Res. Inc., v. Soo Line R. Co.*, 2015 ND 187, ¶ 29, 867 N.W.2d 308. West Fargo argues McAllister's narrow interpretation of N.D.C.C. § 40-22-05 would also render ineffective the immediate possession language used in the water resource district eminent domain statute. *See* N.D.C.C. § 61-16.1-09(2)(b) (allowing water resource districts to acquire right of way by quick-take eminent domain as authorized by N.D. Const. art. I, § 16). We agree the statute permits the use of quick-take procedures for the sewer line at issue in this case. McAllister argues that even if the quick-take procedure is statutorily allowed, the use of quick-take is still limited by the constitution.

[¶11] Here, the district court concluded that West Fargo has the ability to condemn private property rights for the sewer improvement project and that the quick-take authority under N.D.C.C. § 40-22-05 exists in this situation. The phrase "right of way" must be construed in the context as it is used in the relevant constitutional and statutory provisions.

[¶12] Quick-take procedures were included within an amendment to the North Dakota Constitution in 1956. At the time of the amendment the definition of right of way included the following: "**a** *Law*. A right of passage over another person's ground. See EASEMENT, 4; SERVITUDE. . . . **e** The land, other than storage or station yards, occupied by a railroad for its tracks, esp. for its main line; also, the strip of land over which a public road is built, or the strip over which an electric power transmission line passes." *Webster's New International Dictionary* 2148 (2d ed. 1954). One legal dictionary from the time defined right of way as:

> The right of passage or of way is a servitude imposed by law or by convention, and by virtue of which one has a right to pass on foot,

6

or horseback, or in a vehicle, to drive beasts of burden or carts, through the estate of another. When this servitude results from the law, the exercise of it is confined to the wants of the person who has it. When it is the result of a contract, its extent and the mode of using it is regulated by the contact.

"Right of way," in its strict meaning, is the right of passage over another man's ground; and in its legal and generally accepted meaning, in reference to a *railway*, it is a mere easement in the lands of others, obtained by lawful condemnation to public use or by purchase. It would be using the term in an unusual sense, by applying it to an absolute purchase of the fee-simple of lands to be used for a railway or any other kind of a way.

"Right of way" has a twofold significance, being sometimes used to mean the mere intangible right to cross, a right of crossing, a right of way, and often used to otherwise indicate that strip of land which a railroad appropriates to its own use, and upon which it builds its roadbed.

The "right of way" is a space of conventional width for one or more railroad tracks, while a "railroad yard" might be extended indefinitely.

*Black's Law Dictionary* 1489 (4th ed. 1957); *cf. Black's Law Dictionary* 1587 (11th ed. 2019) (defining "right-of-way" as "(18c) 1. The right to pass through property owned by another. • A right-of-way may be established by contract, by longstanding usage, or by public authority (as with a highway). Cf. EASEMENT. 2. The right to build and operate a railway line or a highway on land belonging to another, or the land so used. . . . 4. The strip of land subject to a nonowner's right to pass through."). Courts have also said a right of way may mean an easement. *See McCotter v. Barnes*, 101 S.E.2d 330, 334 (N.C. 1958) ("The term 'right of way' has a two-fold meaning: it may be used to designate an easement, and, apart from that, it may be used as descriptive of the use or purpose to which a strip of land is put."); *Graybill v. Hassel*, 74 A.2d 686, 688 (Pa. Super. Ct. 1950) ("In general a *right-of-way* is merely an easement, though not necessarily so. A right-of-way may consist either of the fee or merely of an easement of passage and use, and whether the one or the other is intended in a particular instance must be determined by the agreement as a whole." (Citations omitted.)). We conclude the term right of way was not limited only to roadways and highways at the time of the constitutional

7

adoption of quick-take authority, and the right of way interest as used in the 1956 amendment allows for the sewer line at issue here.

[¶13] In the context of the quick-take procedure, N.D.C.C. § 40-22-05, adopted in 1961 shortly after the constitutional amendment, plainly states that a "right of way" interest exists "for the laying of any main, pipe, ditch, canal, aqueduct, or flume for conducting water, storm water, or sewage." *See also* N.D.C.C. § 40-22-02 ("The governing body of any municipality may establish, maintain, and alter a general system of sewerage for the municipality in such manner and under such regulations as it shall deem expedient and proper."); N.D.C.C. § 40-22-03 ("When it is necessary to conduct the sewage of a municipality beyond the municipal limits . . ., the governing body, by grant, purchase, or condemnation proceedings, may acquire private property over which to construct the sewer . . . ."). The plain language of this portion of the statute providing for a "right of way," which follows the disjunctive word "or," is limited to a right of way for the items listed in the statute and includes the sewer system project in this case. *See State ex rel. Stenehjem v. FreeEats.com, Inc.*, 2006 ND 84, ¶ 14, 712 N.W.2d 828 ("Terms or phrases separated by 'or' have separate and independent significance." (internal citations omitted)).

[¶14] Contrary to McAllister's assertions, the relevant constitutional and statutory language does not restrict or limit "right of way" only to roadways and highways. We conclude the district court did not err in holding the quick-take procedures were authorized because the interest sought to be acquired includes a right of way for the sewer line at issue in this case.

[¶15] The district court also concluded a "special assessment" is not required to be used to pay for the property interest taken by the municipality for the improvement. Although N.D.C.C. ch. 40-22 is titled, "Improvements by Special Assessment Method," "[a] caption may not be used to determine legislative intent or the legislative history for any statute." N.D.C.C. § 1-02-12. The relevant statutory language does not require a municipality to utilize a special assessment to fund an authorized improvement, but is instead permissive rather than mandatory. "The word 'may' is usually used 'to imply permissive, optional, or discretionary, and not mandatory action or conduct.'" *State v.*

8

*Houkom*, 2021 ND 223, ¶ 9, 967 N.W.2d 801 (quoting *State v. Glaser*, 2015 ND 31, ¶ 18, 858 N.W.2d 920). *See also* N.D.C.C. § 40-22-08 (providing while a municipality may create sewer districts for a special assessment improvement project, "[n]othing herein . . . shall prevent a municipality from making and financing any improvement and levying special assessments therefor under any alternate procedure set forth in this title"). We conclude N.D.C.C. ch. 40-22 does not require West Fargo to pay for a sewer improvement project authorized under the chapter with special assessments in order to use the quick-take procedure.

## III

[¶16] McAllister argues the district court erred in excluding all testimony and argument regarding his claim the sewer easement had an adverse impact on his property and erred in preventing him from presenting any testimony on his theory for severance damages to the jury. The district court's ruling was much narrower in scope, and limited to granting West Fargo's motion in limine to exclude testimony from trial that the taking impacted McAllister's property's conformance with the city's setback requirements. The district court has discretion over evidentiary matters, including a decision to exclude the testimony of a witness. *Linstrom v. Normile*, 2017 ND 194, ¶ 12, 899 N.W.2d 287. A court abuses its discretion when it acts "arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process." *Id.*

[¶17] Here, the district court concluded the sewer easement does not impact McAllister's front yard setback. The court explained:

> The front yard requirements for property in the "A" district are found at section 4-421.4 of the City ordinances. Under W.F. Ord. 4-421.4(f) [sic] requires a minimum front yard for property fronting an arterial road of "150' from centerline or 75' from the established right-of[-]way, whichever is greater." By definition, under the Zoning Ordinances, the minimum front yard measurement is in reference to the arterial road's centerline or the arterial road's established related right-of-way. Defendant strains application of the City Ordinances in his argument that the

9

definition of right-of-way from the subdivision regulations, which by their terms relate to the subdivision regulations, must be read in conjunction with the definition of a minimum front yard under the Zoning Ordinance. The term right-of-way as used in W.F. Ord[.] 4-421.4(f) is limited to its context, which is not just any right-of-way, but the particular established right-of-way related to the arterial road.

The district court specifically rejected as a matter of law McAllister's assertion the city's recently-acquired permanent right-of-way easement created a new benchmark or reference line from which a minimum front yard is to be measured. The court therefore concluded all testimony and argument claiming the sanitary sewer easement obtained in this case has an impact on the front yard setback requirement found in W.F. Ord. 4-421.4(f) was excluded and inadmissible at trial.

[¶18] Interpretation of the ordinance was a question of law. *See Arnegard v. Arnegard Twp.*, 2018 ND 80, ¶ 14, 908 N.W.2d 737 ("Ordinance interpretation, like statutory interpretation, is a question of law subject to full review upon appeal."). We agree with the district court's interpretation of the ordinance and with the court's determination that McAllister sought to admit evidence based on an incorrect interpretation. We conclude the court did not abuse its discretion by precluding testimony and argument on a measure of damages premised on McAllister's erroneous interpretation of the city's zoning ordinances.

IV

[¶19] We have considered the remaining issues and arguments raised by McAllister and conclude they are either without merit or unnecessary to our decision. The district court correctly determined that quick-take procedures were available to the City of West Fargo in the sewer project at issue in this case. The district court did not abuse its discretion on excluding evidence that relied upon an incorrect interpretation of West Fargo's zoning ordinance. The amended judgment is affirmed.

[¶20] Jon J. Jensen, C.J.

Gerald W. VandeWalle

Daniel J. Crothers

Lisa Fair McEvers

Jerod E. Tufte