**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Terry Franklin MILLER, Defendant and Appellant.**

**Cr. No. 870207.**

Supreme Court of North Dakota.

Feb. 2, 1988.

Anna M. Frissell, Asst. State's Atty. for Burleigh County, Bismarck, for plaintiff and appellee.

Michael R. Hoffman, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

Terry Franklin Miller appealed from an order committing him to the State Penitentiary to commence serving the balance of his sentence. We affirm.

On December 8, 1983, Miller pleaded guilty to the crime of attempting to obtain possession of a controlled substance by deception. Miller was sentenced to three years in the State Penitentiary. However, two years of the execution of that sentence were suspended for two years subject to the conditions that for that period Miller (1) not violate any criminal laws, (2) obey all rules of the State Parole and Probation Department, and (3) submit to a search of his person or place of residence at any time.

After Miller served the initial year of his prison sentence he began probation. Subsequently the State filed a petition to revoke probation. A hearing was held on the petition. At the hearing the State recommended revocation of probation, and Miller asked the trial court to continue the suspension of sentence until drug treatment was concluded. As a result of the hearing the trial court issued its order of November 4, 1986, revoking Miller's probation and requiring him to serve the two remaining years of his sentence. However, the trial court further "stayed" the sentence "until the defendant completes drug and alcohol treatment," stating that "If the defendant successfully completes drug and alcohol treatment, the stayed sentence will be dismissed."

Miller commenced drug and alcohol treatment. He failed to complete the final phase of a three-phase treatment program. The State then filed a "motion to enforce revocation." A hearing was held on July 24, 1987. The trial court found that Miller did not complete treatment and ordered

him to serve the two-year sentence. The trial court gave credit to Miller for time served on this sentence from February 3, 1987, apparently on the theory that the sentence became self-executing when the contemplated period of treatment ended. It is from this order that Miller appealed.

It is Miller's contention that he should have been given credit for the time served on his sentence from November 4, 1986. Miller argues that the trial court had no authority to "stay" execution of his sentence and therefore his sentence began to run on the day it was imposed.

Miller bases his argument on *In re Markuson*, 5 N.D. 180, 64 N.W. 939 (1895). In *Markuson* the defendant was sentenced to pay a $200 fine and to spend 90 days in jail. The trial court's judgment also provided: "It is further ordered that in case an appeal be taken that the time shall commence to run from the date of the remittitur or judgment of the supreme court being filed in this court." An unsuccessful appeal was taken, and after the Supreme Court's judgment was filed (more than 90 days later), the trial court ordered the defendant to be imprisoned.

The defendant appealed from that order contending that his sentence had already elapsed because more than 90 days had passed from the day of sentencing, and because the trial court had no authority to stay the execution of sentence. On appeal, the court stated that at common law a stay could not be obtained after conviction and that it could "find no authority anywhere under which the time of taking effect of a judgment of imprisonment as originally pronounced may, by orders of the trial court, be postponed from time to time for any purpose or under any circumstances." 64 N.W. at 941. Thus the court concluded that the defendant's sentence had never been legally stayed "and therefore it began its operation when it was pronounced, and continued to be in full force from that day until it ceased to operate by its own terms." 64 N.W. at 941.

Miller argues that *Markuson* controls the case before us because there is no statutory authority for a judge to "stay" the execution of a criminal sentence other than a stay pending appeal. In making this contention he points to Rule 32(f), N.D. R.Crim.P., arguing that that rule provides the only alternatives for a trial court when a petition to revoke probation is brought. Rule 32(f) provides that upon a hearing to revoke probation the trial court "may revoke an order suspending a sentence or an order suspending the imposition of sentence, or continue probation on the same or different conditions, as the circumstances warrant." Thus, Miller argues, because the rule provides for only two alternatives at a revocation hearing—revocation or continuance of probation—the trial court lacked authority to revoke probation, invoke a sentence, *and then to "stay" that sentence.*

We disagree with Miller's contention that Rule 32(f) is the only law applicable at a revocation hearing. Section 12.1–32–07(4), N.D.C.C., also applies to revocation-of-probation proceedings. That statute provides:

"The court may, upon notice to the probationer, modify or enlarge the conditions of a sentence to probation at any time prior to the expiration or termination of the period for which the sentence remains conditional. *If the defendant violates a condition at any time prior to the expiration or termination of the period, the court may continue him on the existing sentence, with or without modifying or enlarging the conditions, or if such continuation, modification, or enlargement is not appropriate, may impose any other sentence that was available under section 12.1–32–02 or 12.1–32–09 at the time of initial sentencing.*" [Emphasis supplied.]

This statute provides authority for the trial court to resentence a defendant if it determines to revoke his probation. This conclusion is clearly indicated by the legislative history of this section.

Section 12.1–32–07(4) was enacted by the Legislature in 1973 during the revision of our criminal code. Our criminal code is modeled on the proposed Federal Criminal Code. *State v. Trieb*, 315 N.W.2d 649, 657,

fn. 9 (N.D.1982). Section 12.1–32–07(4) was drawn from § 3102 of the 1970 Study Draft of the proposed Federal Criminal Code. Comments to § 3102 state that the section

"makes it clear that the entire range of sentences originally available remains available in the event of a revocation. As noted, *this would not change present law in cases in which the judge suspends the imposition of sentence, but it might in cases in which he suspends its execution.* The reason for such a provision is the belief that it is unsound for the judge to decide at the time of sentencing what he will do if the defendant does not abide by the conditions of probation. This decision should await a chance to evaluate what in fact has occurred. Nothing is lost by the wait in the sense of alternatives open to the judge, and much is gained in the sense that the judge is now able to operate on fresh facts.

"The proposal also contains the implication that imprisonment should not be the automatic response to the violation of a condition, but that other recourse should be considered. Continuation [of] the existing sentence with a warning might be appropriate if the violation were only minor; a warning accompanied by an enlargement of conditions might be appropriate if the violation were more serious. Imprisonment nevertheless remains in the background as the ultimate sanction in cases where it is deemed appropriate." [Emphasis added; footnote omitted.] *Working Papers of the National Commission on Reform of Federal Criminal Laws,* Vol. II, p. 1309 (1970).

Therefore, a court may resentence a defendant to any sentence initially available within the provisions of Sections 12.1–32–02 and 12.1–32–09 when it revokes the defendant's probation.

That is what occurred in this case. After the probation-revocation hearing the trial court revoked Miller's probation. It then resentenced him, requiring him to serve two years in the State Penitentiary. However, as part of the sentence the court, using the term "stayed," delayed the execution of the sentence on the condition that Miller complete drug and alcohol treatment. Although the trial court used the term "stay," in effect it suspended the execution of the sentence by placing Miller on probation with the condition that he complete alcohol and drug treatment. Use of probation as part of a sentence is authorized by Section 12.1–32–02(1), N.D.C.C. Thus the trial court had the authority to suspend the execution of the sentence entered after the original probation was revoked.

We note that the trial court's actions "staying" the execution of Miller's sentence upon the revocation of the original probation comports with one of the purposes of Section 12.1–32–07(4). The quoted material from the *Working Papers, supra,* indicates that one purpose of the statute was to avoid the use of imprisonment as an automatic response to the violation of a probationary condition, encouraging that "other recourse should be considered." In this case the trial court revoked the original probation, but apparently felt that Miller might yet be assisted by alcohol and drug treatment. Thus the trial court suspended the execution of sentence hoping to avoid imprisoning Miller through use of addiction treatment. It would be an absurd result to allow Miller to gain a windfall just because the trial court used the word "stay" to describe the actions it was taking.

We conclude that the order entered by the trial court on November 4, 1986—revoking probation, sentencing Miller, and "staying" the execution of the sentence—was not void. Therefore, Miller is not entitled to credit toward his prison sentence for the time between the date of the order and February 3, 1987.

Our conclusion, although it does not rest thereon, is also supported by the fact, alluded to previously, that the defendant agreed to the suspension of the execution of his sentence. Furthermore, at the original hearing the trial court asked Miller's counsel if delaying the execution of sentence on the condition that Miller take addiction treatment was agreeable with Mil-

ler. Miller's counsel responded, "Yes, it is."

In the case of *Ex parte Schantz*, 26 N.D. 380, 144 N.W. 445 (1913), this court determined that the case of *In re Markuson*, discussed previously, did not require that the term of imprisonment be figured from the day of judgment where the defendant had given a supersedeas bond. In discussing the *Markuson* case, this court quoted with approval the decision of *Miller v. Evans*, 115 Iowa 101, 88 N.W. 198 (1901). That case stated that the conclusion in the *Markuson* case

> "seems to have been treated as a *necessary result of declaring the order suspending the sentence illegal.* We are unable to discover any reason for allowing the convict to thus profit by a delay

to which he has assented, or in which he has acquiesced without objection. The time at which the sentence is to be carried out is ordinarily directory only, and forms no part of the judgment of the court." [Emphasis supplied in *Schantz*, 144 N.W. at 448, quoting *Miller v. Evans*, 88 N.W. at 199.]

The order is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.