STATE of North Dakota, Plaintiff and Appellee,

v.

Gerald GEFROH, Defendant and Appellant.

Cr. No. 890274.

Supreme Court of North Dakota.

July 3, 1990.

Lyle Gregory Witham (argued), States Atty., Towner, for plaintiff and appellee.

Laura J. Wetsch (argued), Fleming, DuBois & Trenbeath, Langdon, for defendant and appellant.

LEVINE, Justice.

Gerald Gefroh appeals from a judgment and commitment upon revocation of probation. We affirm.

On February 4, 1987, judgment was entered on Gefroh's plea of guilty to Burglary, a class C felony with a maximum penalty of imprisonment for five years, a fine of $5,000, or both. The court sentenced Gefroh to imprisonment for two years and provided:

"It is the Further Order and Judgment of this Court that Defendant serve six (6) months of said sentence in the North

Dakota State Farm. That execution of the balance of Defendant's sentence be suspended for a period of two years from the date of Defendant's release, and that during such period of suspension Defendant be placed on supervised probation, ..."

On May 5, 1989, Gefroh's probation officer sought revocation of Gefroh's probation for violations of probation conditions. After a hearing, the district court determined that Gefroh had violated the terms of his probation and ordered that he be confined at the State Penitentiary for a term of four and one-half years. Gefroh appealed, raising the following issues:

"I. WHETHER THE STATE WAIVED GERALD GEFROH'S PROBATION VIOLATIONS BY FAILING TO BRING ITS PETITION TO REVOKE PROBATION IN A TIMELY MANNER.

"II. WHETHER THE STATE VIOLATED GERALD GEFROH'S RIGHT TO A SPEEDY TRIAL BY FAILING TO BRING ITS PETITION TO REVOKE PROBATION IN A TIMELY MANNER.

"III. WHETHER THE DISTRICT COURT ERRED IN INCREASING THE LENGTH OF GERALD GEFROH'S SUSPENDED SENTENCE AFTER REVOCATION OF PROBATION.

"A. Whether the District Court may constitutionally increase the length of a sentence imposed, but suspended, following revocation of probation.

"B. Whether the district court is statutorily authorized to increase the length of a sentence imposed, but suspended, following revocation of probation.

"IV. WHETHER, IN THE ALTERNATIVE, THE DISTRICT COURT ERRED IN INCREASING GERALD GEFROH'S SENTENCE TO A TERM THAT, COMBINED WITH HIS PREVIOUSLY SERVED SENTENCE, EXCEEDED THE STATUTORY MAXIMUM ALLOWED BY LAW."

I.

In arguing that the State waived his probation violations by failing to petition for revocation in a timely manner, Gefroh asserts:

"In the case *sub judice*, probation officers were aware of violations of probation for over one year before the petition to revoke was filed. The State's Attorney was similarly aware of the violations, yet chose not to file the petition to revoke until days before the expiration of the probationary term.... Thus, it violates notions of fundamental fairness for the State to knowingly delay filing its petition to revoke probation until the very eve of the expiration of the probationary term."

Gefroh's probation officer learned of various violations of the conditions of Gefroh's probation well before seeking revocation of Gefroh's probation. At the time of the probation revocation hearing on June 12, 1989, Gefroh's probation officer had been aware for over a year of Gefroh's presence in bars and that there were charges of disorderly conduct against Gefroh, which he brought to the attention of the State's Attorney in December 1988. Gefroh had also been charged with driving while his license was under suspension. A revocation hearing was delayed because "[w]e were waiting for pleas on the disorderly and the driving under suspension charges." The district court determined that the defendant "was doing his very best to avoid a completion of trial of these charges until after his probation before this Court had run" and only when that "became clear to the State" did the State decide that "it should probably go ahead with a probation revocation hearing even though there had not yet been a final disposition of the disorderly conduct charge."

Probation officers commonly decide not to immediately institute proceedings to revoke probation upon learning of a probation violation. As the Supreme Court noted with regard to parole in *Morrissey v. Brewer*, 408 U.S. 471, 479, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484, 493 (1972):

"... In practice, not every violation of parole conditions automatically leads to revocation. Typically, a parolee will be counseled to abide by the conditions of

parole, and the parole officer ordinarily does not take steps to have parole revoked unless he thinks that the violations are serious and continuing so as to indicate that the parolee is not adjusting properly and cannot be counted on to avoid antisocial activity."

In *United States v. Hamilton*, 708 F.2d 1412, 1415 (9th Cir.1983), the court held that "[r]evocation of probation after unreasonable delay or under circumstances inherently misleading to the probationer is an abuse of discretion." However, the court also stated:

"We do not hold that under appropriate circumstances a probation officer or district court may not wait to assess the cumulative effect of several violations before initiating a revocation proceeding.... We also do not suggest that revocation proceedings should be an automatic reaction to technical or minor violations simply to preserve the government's position." (Citations omitted.)

708 F.2d at 1415. "[I]mprisonment should not be the automatic response to the violation of a condition" of probation. *Working Papers of the National Commission on Reform of Federal Criminal Laws*, Vol. II, p. 1309 (1970), quoted in *State v. Miller*, 418 N.W.2d 614, 616 (N.D.1988). In appropriate cases, probation officers may "wait to assess the cumulative effect of several violations before initiating a revocation proceeding." *Hamilton*, 708 F.2d at 1415. In *State v. Hass*, 268 N.W.2d 456, 460 (N.D. 1978), this court expressed a preference for trying a criminal charge before seeking revocation of probation for the same act:

"We believe that in certain instances the prosecutors and the courts should give serious thought to forego use of the same criminal act as a basis for both an independent prosecution for a substantive crime and as a basis for a revocation of probation or parole or sentencing a defendant who has been granted a deferred imposition of sentence. If, in all probability, the resulting sentences after

revocation and conviction of a substantive crime will run concurrently or will not be materially increased, then the revocation proceedings should be delayed until after the substantive-crime violation has been disposed of, at which time it may be determined that it will not be necessary to conduct a revocation proceeding."

Acceptance of Gefroh's arguments would either encourage probationers to delay trial on independent prosecutions for substantive crimes constituting probation violations or deprive probation officers of the opportunity to "wait to assess the cumulative effect of several violations before initiating a revocation proceeding" by forcing probation officers to make revocation proceedings "an automatic reaction to technical or minor violations simply to preserve the government's position" (*United States v. Hamilton, supra*, 708 F.2d at 1415). We conclude that the trial court did not abuse its discretion in ruling that it is appropriate for the State to await disposition of criminal charges before initiating probation revocation proceedings. We further conclude that the trial court did not err in refusing to dismiss the revocation petition because of the State's failure to bring its petition to revoke sooner than it did.

## II.

■ Gefroh contends that the State violated his right to a speedy trial under the sixth amendment to the United States Constitution and Art. I, § 12, N.D. Const., by failing to bring its petition to revoke probation in a timely manner. Although the State does not dispute the applicability of speedy trial analysis, it has been held that the constitutional right to a speedy trial does not apply to probation revocation proceedings. *See United States v. Jackson*, 590 F.2d 121 (5th Cir.1979), *cert. denied*, 441 U.S. 912, 99 S.Ct. 2012, 60 L.Ed.2d 385; *State v. Chavez*, 102 N.M. 279, 694 P.2d 927 (App.1985). Therefore, the claim is wholly unpersuasive.[1]

---

1. Gefroh did not raise a due process argument with regard to the timeliness of the proceedings. Due process requires that a revocation hearing

be tendered within a reasonable time after a parolee is taken into custody. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d

## III.

Gefroh contends that the district court erred in increasing the length of his sentence after revocation of probation because (1) increasing the length of a sentence imposed, but suspended, after revocation of probation is unconstitutional because it violates due process or constitutes double jeopardy; and (2) the district court was not statutorily authorized to increase the length of a sentence imposed, but suspended, after revocation of probation.

In his brief on appeal, Gefroh asserted the following due process argument:

"This Court has also previously indicated that increasing the length of a sentence following revocation of probation may implicate due process concerns. *State v. Nace,* 371 N.W.2d 129, 133 n. 4 (N.D.1985). *See also Ralston v. Robinson,* 454 U.S. 201, 223–24 [102 S.Ct. 233, 70 L.Ed.2d 345 (1981)] (Stevens, J., dissenting) (recognizing rule that sentence which has been partly suffered may not be increased). This is particularly true where the trial court has basically promised the probationer that, if he violates his probation, the result will be that he will serve the suspended portion of his sentence.

\* \* \* \* \* \*

"... Gerald Gefroh received specific instruction from the trial court regarding the result of violating his probation: incarceration for the balance of his sentence—eighteen months. To change the terms of the 'agreement' at this late stage would surely violate standards of due process and fundamental fairness."

Gefroh did not raise this due process issue in the district court. In his response to the trial court's request for briefs regarding potential sentences upon revocation of probation, Gefroh specifically excluded reliance on any due process argument:

"This defendant relies on construction of statutory law. If a constitutional argument was raised, however, it seems apparent that due process requirements would prohibit a court from modifying a sentence which has been imposed, but whose execution has been suspended."

An issue not raised in the trial court cannot be raised for the first time on appeal. *State v. Brown,* 420 N.W.2d 5 (N.D.1988).

Relying on *United States v. Fogel,* 264 App.D.C. 292, 829 F.2d 77 (D.C.Cir.1987), Gefroh contends: "If a defendant has a legitimate expectation in the finality of his sentence, then that sentence may not be subsequently increased without violating the double jeopardy clause of the fifth amendment to the United States Constitution." Gefroh concedes that "if the defendant knew, or should have known, that the sentence could be later increased, then he had no legitimate expectation of finality and the increase would not be prohibited by the double jeopardy clause."

When he was originally sentenced, § 12.1–32–07(4), N.D.C.C., provided:

"The court may, upon notice to the probationer, modify or enlarge the conditions of a sentence to probation at any time prior to the expiration or termination of the period for which the sentence remains conditional. If the defendant violates a condition at any time prior to the expiration or termination of the period, the court may continue him on the existing sentence, with or without modifying or enlarging the conditions, or if such continuation, modification, or enlargement is not appropriate, may impose any other sentence that was available under section 12.1–32–02 or 12.1–32–09 at the time of initial sentencing."

In *State v. Jones,* 418 N.W.2d 782 (N.D. 1988), which also involved a suspended execution of sentence and probation, we held that resentencing a defendant to a greater sentence upon revocation of probation was not a violation of the guarantee against

484 (1972). "[T]he commentators have agreed that revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole." *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct.

1756, 1759, 36 L.Ed.2d 656, 661–662 n. 3 (1973). Preaccusatorial delay raises a due process issue, rather than speedy trial issue. *State v. Denny,* 351 N.W.2d 102 (N.D.1984); *State v. Chavez,* 102 N.M. 279, 694 P.2d 927 (App.1985).

being subjected to double jeopardy. We construed § 12.1–32–07(4), N.D.C.C., as providing notice of the possibility of a more severe sentence upon revocation of probation:

"In this case Jones was on probation, and Section 12.1–32–07(4) gave Jones notice that a violation of the conditions of his probation could result in the imposition of *any* sentence which was originally available. This includes a sentence which is more severe than the sentence originally imposed. Thus Jones should have expected that a violation of the conditions of his probation could result in a harsher sentence."

*Jones*, 418 N.W.2d at 785–786. Because § 12.1–32–07(4), N.D.C.C., gave Gefroh notice that violation of the conditions of his probation could result in the imposition of a harsher sentence upon revocation of his probation, Gefroh had no legitimate expectation in the finality of his sentence and the district court's imposition of a harsher sentence was not prohibited by the double jeopardy clause.

■ Gefroh contends that the district court was not statutorily authorized to increase the length of a sentence imposed, but suspended, after revocation of probation. When Gefroh was originally sentenced, § 12–53–11, N.D.C.C., provided in part:

"The court, ... may revoke the suspension of the sentence of a person convicted of a felony and placed on probation and may terminate the probation and cause said person to suffer the penalty of the sentence previously imposed upon him, if the court shall determine ... that the probationer has violated any of the rules and regulations prescribed for the conduct of probationers."

Gefroh contends that we should construe § 12–53–11, N.D.C.C., and § 12.1–32–07, N.D.C.C., "so as to effectuate both statutes ... by finding that section 12–53–11 is specific to suspended sentences, while 12.1–32–07 applies to deferred imposition of sentences, or sentences to straight probation." A similar argument was rejected in *State v. Vavrosky*, 442 N.W.2d 433, 437 (N.D.1989):

"Section 12.1–32–07(4) ... was obviously intended to be the paramount legislation not only in defining criminal offenses but also in the area of sentencing and probation. Thus, even if there is a conflict between the two sections, and we do not concede there is, Section 12.1–32–07(4) controls. Therefore, in accordance with *Miller*, the trial court, on December 29, 1988, was authorized under Section 12.1–32–07(4) to resentence Vavrosky to any sentence available at the time of the initial sentence, with credit given him for all time spent in custody as a result of the sentence for the crime of forgery."

Before *Vavrosky*, we had also decided that when execution of a sentence was suspended, the defendant could, under § 12.1–32–07(4), N.D.C.C., be resentenced upon revocation of probation to any sentence available at the initial time of sentencing. See *State v. Jones, supra; State v. Miller, supra.* Earlier, in *State v. Nace*, 371 N.W.2d 129, 132 (N.D.1985), Nace sought "to have this Court distinguish 'probation' under § 12.1–32–02 from 'suspension of the sentence' under chapter 12–53, N.D.C.C., urging that the exclusive terms of 'probation' are determined by 12.1–32–07, and that 'suspension' under chapter 12–53 is an entirely different and 'all or nothing' alternative." We held "that a chapter 12–53 'suspension' is a form of 'probation' available under the general sentencing alternatives of § 12.1–32–02." *State v. Nace, supra*, at 132.

Chapter 12–53, N.D.C.C., was repealed by the 1989 Legislative Assembly (S.L. 1989, Ch. 158, § 18). Section 12.1–32–07(4), N.D.C.C., was renumbered as 12.1–32–07(5), N.D.C.C., and amended by adding the following sentence: "In the case of suspended execution of sentence, the court may revoke the probation and cause the defendant to suffer the penalty of the sentence previously imposed upon the defendant." S.L.1989, Ch. 158, § 4. That sentence was drawn, without substantial change, from § 12–53–11, N.D.C.C. By reenacting § 12.1–32–07(4), N.D.C.C., [now, 12.1–32–07(5), N.D.C.C.] and amending it by adding a sentence drawn, without sub-

stantial change, from former § 12–53–11, N.D.C.C., the Legislature impliedly adopted our construction of those sections. See *Skinner v. American State Bank,* 189 N.W.2d 665 (N.D.1971), where this court held, in Syllabus ¶ 1:

"The construction of a statute by the courts, supported by long acquiescence on the part of the Legislature, by continued use of the same language, or by failure to amend the statute, is evidence that such construction is in accordance with the legislative intent."

*See also, Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40, 46 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.").

We adhere to our decision in *Vavrosky* and hold that § 12.1–32–07(4), N.D.C.C., authorized the district court to increase the length of the sentence imposed, but suspended, upon resentencing Gefroh after revocation of his probation.

## IV.

In *State v. Nace, supra,* we held that a defendant's combined term of imprisonment and probation cannot exceed the maximum sentence of imprisonment authorized for the offense.[2] Gefroh argues that the district court erred in sentencing him to imprisonment for four and one-half years upon revocation of probation because the combined total of the six months of incarceration he served on his original sentence, the two years he spent on probation, and the additional four and one-half years of incarceration ordered upon revocation of probation "equal seven years—two years in excess of the statutory maximum." We disagree. As we said in *State v. Vavrosky, supra,* 442 N.W.2d at 436, "probation is not 'time spent in custody' and therefore Vav-

rosky is not entitled to credit for time he was released on probation under Section 12–53–11." Therefore, Gefroh's sentence after revocation of his probation did not exceed the statutory maximum. *Nace* governs only initial sentencing and is not applicable to resentencing upon revocation of probation.

Affirmed.

ERICKSTAD, C.J., and GIERKE, VANDE WALLE and MESCHKE, JJ., concur.

---

2. *Nace* has received legislative attention. *See State v. Rohrich,* 450 N.W.2d 774, 775 n. 1 (N.D.1990):

"As a result of *State v. Nace,* 371 N.W.2d 129 (N.D.1985), ..., the 1989 Legislative Assembly made wholesale changes to the sentencing provisions in the Century Code. *See*

Report of the North Dakota Legislative Council, Fifty-first Legislative Assembly (1989), at pp. 136–140. Chapter 12–53, NDCC, was effectively repealed on July 10, 1989. Moreover, the Legislature made numerous modifications to the sentencing statutes in ch. 12.1–32, NDCC...."