# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 153

James Aaron Dubois, Jr.,            Petitioner and Appellant

     v.

State of North Dakota,            Respondent and Appellee

## No. 20210019

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Steven L. Marquart, Judge.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Opinion of the Court by Crothers, Justice, in which Chief Justice Jensen and Justice Tufte joined. Justice VandeWalle filed a dissenting opinion in which Justice McEvers joined.

Kiara C. Kraus-Parr, Grand Forks, ND, for petitioner and appellant.

Alexis Madlom (argued), third-year law student, under the Rule on Limited Practice of Law by Law Students, Robert C. Vallie (appeared) and Kimberlee J. Hegvik (on brief), Assistant State's Attorneys, Fargo, ND, for respondent and appellee.

1

# Dubois v. State
## No. 20210019

**Crothers, Justice.**

[¶1]   James Dubois, Jr. appeals from an order denying his application for post-conviction relief, arguing he received ineffective assistance of counsel, his plea was not knowing, voluntary and intelligent, and his sentence was illegal. We reverse and remand with instructions to sentence Dubois consistent with N.D.C.C. § 12.1-32-07(6) and this opinion.

I

[¶2]   In August 2017, Dubois pleaded guilty to two counts of criminal trespass and one count of refusal to halt. Dubois was sentenced to 18 months with the Department of Corrections and Rehabilitation, first to serve 90 days with the balance suspended for 18 months of supervised probation.

[¶3]   On January 28, 2019, Dubois appeared at a probation revocation hearing. Dubois admitted to three probation violations and the district court revoked Dubois' probation and resentenced him to five years in prison. Following resentencing, Dubois filed a direct appeal where he argued the district court abused its discretion in revoking his probation and the court's new sentence was illegal because it exceeded his original sentence. *State v. Dubois*, 2019 ND 284, ¶¶ 4, 7, 936 N.W.2d 380. This Court affirmed, concluding the district court did not abuse its discretion in revoking probation and resentencing, and the district court did not obviously err by imposing a sentence consistent with North Dakota precedent. *Id*. at ¶¶ 5-6, 11.

[¶4]   Dubois filed a post-conviction relief action claiming he received ineffective assistance of counsel and his plea and admissions were not voluntary. A hearing was held and the district court found Dubois' counsel was not ineffective and his plea was knowingly, voluntarily and intelligently made. The court found Dubois' counsel's failure to argue illegality of Dubois' sentence on revocation fell within the wide range of reasonable professional assistance. Dubois appealed from the order.

## II

[¶5] Dubois argues the district court erred in finding he received effective assistance of counsel. Dubois claims his counsel failed to object to an illegal sentence and did not explain to Dubois that probation revocation could result in him being resentenced to five years.

[¶6] This Court's standard of review for post-conviction proceedings is well established:

> "A trial court's findings of fact in a post-conviction proceeding will not be disturbed on appeal unless clearly erroneous under N.D.R.Civ.P. 52(a). A finding is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support it, a reviewing court is left with a definite and firm conviction a mistake has been made. Questions of law are fully reviewable on appeal of a post-conviction proceeding."

*Brewer v. State*, 2019 ND 69, ¶ 4, 924 N.W.2d 87 (citations omitted).

[¶7] Post-conviction proceedings are civil in nature and the applicant carries the burden of establishing the grounds for relief. *Rourke v. State*, 2018 ND 137, ¶ 5, 912 N.W.2d 311. To succeed on a claim for ineffective assistance of counsel, the applicant must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668 (1984)). The *Strickland* test is a high bar and must be applied with scrupulous care. *Rourke*, ¶ 5. The first prong requires that the applicant must "overcome the 'strong presumption' that trial counsel's representation fell within the wide range of reasonable professional assistance, and courts must consciously attempt to limit the distorting effect of hindsight." *Id.* (quoting *Laib v. State*, 2005 ND 187, ¶ 9, 705 N.W.2d 845).

A

[¶8]   Dubois argues his trial counsel was ineffective by failing to object to his resentencing as illegal. Dubois asserts the resentencing was illegal because he received a sentence longer than originally imposed. This Court has "long held that the current provisions of N.D.C.C. § 12.1-32-07(6) allow a district court to impose any sentence available at the initial time of sentencing . . ." *Dubois*, 2019 ND 284, ¶ 9. At the time of Dubois' resentencing, this Court's precedent supported a longer sentence on revocation than originally imposed. Counsel's failure to raise a novel or groundbreaking legal claim does not constitute ineffective assistance of counsel. *See Yoney v. State*, 2021 ND 132, ¶ 12 (counsel's submission of jury instruction that was consistent with precedent was not ineffective assistance); *accord Ragland v. U.S.*, 756 F.3d 597, 601 (8th Cir. 2014) (counsel's failure to raise a "novel argument" did not render his performance constitutionally ineffective); *Brown v. U.S.*, 311 F.3d 875, 878 (8th Cir. 2002) (counsel's decision to not raise issue unsupported by precedent did not constitute ineffective assistance). Therefore, the district court did not err in finding Dubois' counsel's failure to argue illegality of the new sentence fell within the wide range of reasonable assistance.

B

[¶9]   Dubois argues his trial counsel was ineffective for not explaining he could be resentenced to five years. Dubois testified his trial counsel never discussed with him the maximum potential sentence for revocation of his probation. Dubois' trial counsel testified his practice was to inform clients that, if probation was revoked, it was possible to be resentenced to the maximum amount of time, or five years in this case. The district court found Dubois' assertion was "incredulous" in light of his trial counsel's testimony. "The district court is the best credibility evaluator in cases of conflicting testimony, and we will not second-guess the district court's credibility determinations." *In re Johnson*, 2013 ND 146, ¶ 7, 835 N.W.2d 806. The court did not err in finding Dubois received effective assistance of counsel.

## III

[¶10] Dubois argues his probation violation admissions were not knowingly, voluntarily, or intelligently made. Dubois argues adherence to N.D.R.Crim.P. 11 is required for admissions on revocation. The plain language of N.D.R.Crim.P. 11 makes no mention of admissions on revocation. Instead, Rule 11 only addresses plea agreements and pleading procedures in criminal cases. *Id*. Further, Dubois cites no cases and we have found none applying Rule 11 to probation revocation admissions. Because Rule 11 does not apply to admissions on revocation, and because Dubois only argues his revocation admissions were improper under Rule 11, Dubois' argument fails.

## IV

[¶11] Dubois argues the district court's new sentence of five years' imprisonment is illegal because it exceeds the balance of the 18-month term he originally was sentenced to serve. In support, Dubois cites N.D.C.C. § 12.1-32-07(6), which at the time Dubois was resentenced stated:

> "The court, upon notice to the probationer and with good cause, may modify or enlarge the conditions of probation at any time prior to the expiration or termination of the period for which the probation remains conditional. If the defendant violates a condition of probation at any time before the expiration or termination of the period, the court may continue the defendant on the existing probation, with or without modifying or enlarging the conditions, or may revoke the probation and impose any other sentence that was available under section 12.1-32-02 or 12.1-32-09 at the time of initial sentencing or deferment. In the case of suspended execution of sentence, the court may revoke the probation and cause the defendant to suffer the penalty of the sentence previously imposed upon the defendant."[1]

---

[1] Section 12.1-32-07(6) was amended by the 2021 Legislature. 2021 Sess. Laws ch. 111. Changes were as follows:

Dubois argues the last clause of N.D.C.C. § 12.1-32-07(6) limits a court's resentencing authority on revocation of probation to the balance of the suspended sentence.

A

[¶12] Statutory interpretation is a question of law, fully reviewable on appeal. *State v. Corman*, 2009 ND 85, ¶ 15, 765 N.W.2d 530.

[¶13] Dubois raised the issue of illegal sentence as part of his application for post-conviction relief. Rule 35(a)(1), N.D.R.Crim.P., provides that "[t]he sentencing court shall correct an illegal sentence at any time . . . " Section 29-32.1-01(1)(a), N.D.C.C., of the Uniform Post[-]Conviction Procedure Act similarly provides that a person convicted of and sentenced for a crime may apply for post-conviction relief upon the ground that "the sentence was imposed in violation of the laws . . . of North Dakota." This Court has said:

> "[T]hese post-conviction remedies co-exist for similar purposes as to illegal sentences, these remedies under comparable provisions of federal law are often used interchangeably to attack a sentence illegal on its face, and [we] have suggested a motion under the rule or the statute should be treated as equivalent to a motion under both provisions."

*State v. McClary*, 2016 ND 31, ¶ 7, 876 N.W.2d 29 (citations omitted). We therefore consider Dubois' claim as presented.

---

"The court, upon notice to the probationer and with good cause, may modify or enlarge the conditions of probation at any time ~~prior to~~ before the expiration or termination of the period for which the probation remains conditional. If the defendant violates a condition of probation at any time before the expiration or termination of the period, the court may continue the defendant on the existing probation, with or without modifying or enlarging the conditions, or may revoke the probation and impose any other sentence that was available under section 12.1-32-02 or 12.1-32-09 at the time of initial sentencing or deferment. ~~In the case of suspended execution of sentence, the court may revoke the probation and cause the defendant to suffer the penalty of the sentence previously imposed upon the defendant.~~"

[¶14] Dubois claims the district court imposed an illegal sentence by sentencing him to five years' imprisonment rather than no more than what was left of his 18-month suspended sentence. Dubois asks this Court to overturn our long-standing precedent holding N.D.C.C. § 12.1-32-07(6) allows a district court to impose any sentence available at the time of initial sentencing upon revocation of probation. To understand that precedent, we review this Court's decisions on probation revocation in suspended sentence cases, as well as intervening amendments to the controlling law.

[¶15] Prior to 1989, resentencing after revocation of probation was controlled by N.D.C.C. § 12.1-32-07(4), which provided:

> "If the defendant violates a condition [of probation] at any time prior to the expiration or termination of the period, the court may continue him on the existing sentence, with or without modifying or enlarging the conditions, or if such continuation, modification, or enlargement is not appropriate, may impose any other sentence that was available under section 12.1-32-02 or 12.1-32-09 at the time of initial sentencing."

Prior to its repeal on August 1, 1989, section 12-53-11, N.D.C.C., also addressed revocation of probation and provided: "[A]fter a full investigation and a personal hearing, may revoke the suspension of the sentence of a person convicted of a felony and placed on probation and may terminate the probation and cause said person to suffer the penalty of the sentence previously imposed upon him . . ." Sections 12.1-32-07(4) and 12-53-11, N.D.C.C., are the predecessors to what is now N.D.C.C. § 12.1-32-07(6). In 1989, the legislature amended section 12.1-32-07, N.D.C.C., moved subsection four to subsection five and added the limiting directive from N.D.C.C. § 12-53-11 to the end of section 12.1-32-07(5). Effective August 1, 1989, amended N.D.C.C. § 12.1-32-07(5) read:

> "The court, upon notice to the probationer and with good cause, may modify or enlarge the conditions of probation at any time prior to the expiration or termination of the period for which the

probation remains conditional. If the defendant violates a condition of probation at any time prior to the expiration or termination of the period, the court may continue the defendant on the existing probation, with or without modifying or enlarging the conditions, or may revoke the probation and impose any other sentence that was available under section 12.1-32-02 or 12.1-32-09 at the time of initial sentencing or deferment. *In the case of suspended execution of sentence, the court may revoke the probation and cause the defendant to suffer the penalty of the sentence previously imposed upon the defendant.*"

(Emphasis added.)

[¶16] This Court decided several probation revocation cases prior to the legislature's 1989 amendment to N.D.C.C. § 12.1-32-07. In *State v. Miller*, 418 N.W.2d 614, 616 (N.D. 1988), this Court affirmed a defendant's sentence following probation revocation, broadly concluding N.D.C.C. § 12.1-32-07(4) provided district courts with the authority upon probation revocation to impose any sentence initially available. In *State v. Jones*, 418 N.W.2d 782, 786 (N.D. 1988), this Court affirmed a district court's denial of a motion for correction of sentence. There, Jones appealed the denial, arguing the imposition on revocation of a sentence greater than the original sentence violated his double jeopardy rights under the Fifth Amendment. *Id.* at 783. In affirming, this Court concluded N.D.C.C. § 12.1-32-07(4) allowed a district court, after revoking probation, to impose any sentence available at the initial time of sentencing. *Id.* at 784. This Court further explained that applicable statutes placed the defendant on notice of the possibility of a harsher sentence after revocation of probation and therefore did not constitute double jeopardy. *Id.* at 785-86.

[¶17] Following *Miller* and *Jones*, this Court issued its decision in *State v. Vavrovsky*, 442 N.W.2d 433 (N.D. 1989). When *Vavrovsky* was decided, N.D.C.C. § 12.1-32-07(4) did not include the final sentence currently included in N.D.C.C. § 12.1-32-07(6). Instead, that language was in N.D.C.C. § 12-53-11. In *Vavrovsky* this Court declined to apply N.D.C.C. § 12-53-11 to impose the suspended sentence upon revocation, stating:

7

"Section 12.1-32-07(4), on the other hand, was enacted by the Legislature in 1973 as part of a comprehensive revision of our criminal code. *See* 1973 N.D. Sess. Laws Ch. 116, § 31. It was obviously intended to be the paramount legislation not only in defining criminal offenses but also in the area of sentencing and probation. Thus, even if there is a conflict between the two sections, and we do not concede there is, Section 12.1-32-07(4) controls."

*Id.* at 437.

[¶18] The *Vavrovksy* decision was issued on June 27, 1989. *Id.* at 433. The amendment to N.D.C.C. § 12.1-32-07 was adopted during the 1989 legislative session and took effect August 1, 1989. 1989 N.D. Sess. Laws ch. 158, § 4. *Vavrovsky* was decided consistently with *Miller* and *Jones* under the law in effect when those cases were decided.

[¶19] This Court next decided *State v. Gefroh*, 458 N.W.2d 479, 483-84 (N.D. 1990), interpreting the amendment to N.D.C.C. § 12.1-32-07 as legislative adoption of this Court's interpretation of N.D.C.C. §§ 12.1-32-07 and 12-53-11 in *Miller*, *Jones*, and *Vavrovsky*. In *Gefroh*, the defendant's original sentence was issued in 1987, his probation was revoked, and he was resentenced on August 14, 1989. *Id.* at 479. On appeal after revocation and resentencing, this Court concluded: "We adhere to our decision in *Vavrovsky* and hold that § 12.1-32-07(4), N.D.C.C., authorized the district court to increase the length of the sentence imposed, but suspended, upon resentencing Gefroh after revocation of his probation." *Id.* at 484. The Court in *Gefroh* also concluded that "[b]y reenacting § 12.1-32-07(4), N.D.C.C., [now, 12.1-32-07(5), N.D.C.C.] and amending it by adding a sentence drawn, without substantial change, from former § 12-53-11, N.D.C.C., the Legislature impliedly adopted [this Court's] construction of those sections [in *Miller*, *Jones*, and *Vavrovsky*]." *Id.* at 483-84.

[¶20] This Court's holding in *Gefroh* that the legislature's repeal of N.D.C.C. § 12-53-11 and amendment of N.D.C.C. § 12.1-32-07 amounted to an adoption of the interpretation of those provisions in *Miller*, *Jones* and *Vavrovsky* is problematic for two reasons. First, *Vavrovsky* was the foundation for decisions

8

addressing the inconsistencies between N.D.C.C. §§ 12-53-11 and 12.1-32-07(4). The *Vavrovsky* decision was issued after the legislature's vote to merge the statutes but before the effective date of N.D.C.C. § 12.1-32-07(5). Thus, the legislature could not have relied on our interpretation in *Vavrovsky* when amending those laws. *See Dubois*, 2019 ND 284, ¶ 17 (Jensen, J., specially concurring).

[¶21] Second, *Miller* and *Jones* only addressed the district court's authority to impose any sentence available at the time of initial sentencing upon revocation of probation under N.D.C.C. § 12.1-32-07(4). Those courts refused to apply the limiting language in N.D.C.C. § 12-53-11 to what was later described in *Vavrovsky* as the "paramount legislation" of N.D.C.C. § 12.1-32-07(4). *See Miller*, 418 N.W.2d at 616; *Jones*, 418 N.W.2d at 784-86. The issue proceeded without further discussion until *Vavrovsky* in 1989. The legislature's decision to move the suspended sentence limitation directly into the statute at issue in *Miller* and *Jones* informs us that the desired outcome was to clarify the application of the limitation rather than eliminate it as stated in *Gefroh*. *Gefroh*, 458 N.W.2d at 483-84; *see Dubois*, 2019 ND 284, ¶¶ 18-22 (Jensen, J., specially concurring).

[¶22] "The primary purpose of statutory interpretation is to determine legislative intent." *State v. Bearrunner*, 2019 ND 29, ¶ 5, 921 N.W.2d 894. Words in a statute are given their plain, ordinary, and commonly understood meaning unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05. We construe statutes as a whole and harmonized to give meaning to related provisions. N.D.C.C. § 1-02-07. We generally strictly construe penal statutes against the government. *Corman*, 2009 ND 85, ¶ 15. Further, "[w]e construe statutes in a way which does not render them meaningless because we presume the Legislature acts with purpose and does not perform idle acts." *Meier v. N.D. Dept. of Human Svcs.*, 2012 ND 134, ¶ 10, 818 N.W.2d 774.

[¶23] Here, reading the statute as a whole, the first sentence establishes a general rule allowing the court to revoke probation and "impose any other sentence that was available . . ." N.D.C.C. § 12.1-32-07(6). The second sentence limits the general rule and begins "In the case of suspended execution of sentence . . ." *Id.* The second sentence unambiguously restrains a district court's authority in probation revocation cases to imposition of the sentence initially imposed but suspended. Construing the statute as allowing a district court to impose any sentence initially available renders the last sentence meaningless, requires us to effectively write out the limiting directive, and presumes the legislature performed an idle act by amending N.D.C.C. § 12.1-32-07(4) (now N.D.C.C. § 12.1-32-07(6)). We therefore overrule *Gefroh* and *State v. Lindgren*, 483 N.W.2d 777, 779 (N.D. 1992), which allowed district courts to resentence defendants on probation revocation to any sentence initially available, and did not limit the new sentence to no more than that which was suspended. *See Gefroh*, 458 N.W.2d at 483-84. We reverse and remand this case to the district court for proceedings consistent with this opinion.

[¶24] The dissent is critical of the majority opinion for not reaching a different result based on legislative acquiescence. Dissent, ¶ 30. They ultimately conclude legislative acquiescence, on that basis alone, means we should affirm the district court and not upset this Court's longstanding misinterpretation of N.D.C.C. § 12.1-32-07. Dissent, ¶¶ 32, 35.

[¶25] Admittedly, this Court has embraced legislative acquiescence, perhaps to a degree greater than justified by separation of powers or even the rules of statutory construction. A Kansas Supreme Court decision aptly acknowledged that legislative acquiescence has limitations, stating "We may understand the absence of legislative action to revise the effect of [the prior decision] to represent legislative ratification of that decision. More important, however, is the application of the doctrine of statutory interpretation that directs us to consider the plain language of the statutes." *Hall v. Dillon Cos., Inc.*, 189 P.3d 508, 516 (Kan. 2008).

10

[¶26] The California Supreme Court also probed the limitations of legislative acquiescence, stating:

> "The presumption of legislative acquiescence in prior judicial decisions is not conclusive in determining legislative intent. As we have also stated: Legislative silence after a court has construed a statute gives rise at most to an arguable inference of acquiescence or passive approval. . . . But something more than mere silence is required before that acquiescence is elevated into a species of implied legislation. . . . In the area of statutory construction, an examination of what the Legislature has done (as opposed to what it has left undone) is generally the more fruitful inquiry."

*Harris v. Capital Growth Inv'rs XIV*, 805 P.2d 873, 880 (Cal. 1991) (internal citations and quotation marks omitted) (overruled on other grounds). *See also Devillers v. Auto Club Ins. Ass'n*, 702 N.W.2d 539, n.66 (Mich. 2005) (internal citations and quotation marks omitted) (overruled on other grounds) ("Neither 'legislative acquiescence' nor the 'reenactment doctrine' may be utilized to subordinate the plain language of a statute. 'Legislative acquiescence' has been repeatedly rejected by this Court because Michigan courts [must] determine the Legislature's intent from its *words*, not from its silence. In the absence of a clear indication that the Legislature intended to either adopt or repudiate this Court's prior construction, there is no reason to subordinate our primary principle of construction—to ascertain the Legislature's intent by first examining the statute's language—to the reenactment rule."); *Ritchie v. Rupe*, 443 S.W.3d 856, n.16 (Tex. 2014) ("[T]his Court has consistently refused to rely on 'legislative acquiescence' as a doctrine of statutory construction when it runs contrary to the plain language of the statute.").

[¶27] We agree with the Supreme Courts of our sister states in concluding reliance on legislative acquiescence must be secondary to following the plain language of the statute in question. Applying those rules here, the plain words of N.D.C.C. § 12.1-32-07(6) require the result achieved.

11

## V

[¶28] We reverse and remand the order denying Dubois' application for post-conviction relief with instructions to sentence Dubois consistent with N.D.C.C. § 12.1-32-07(6) and this opinion.

[¶29] Jon J. Jensen, C.J.
Daniel J. Crothers
Jerod E. Tufte

**VandeWalle, Justice, dissenting.**

[¶30] Because the majority opinion does not apply the long-standing doctrine of legislative acquiescence nor adequately explain the reasons for not doing so, I respectfully dissent.

[¶31] Our primary objective in interpreting a statute is to ascertain legislative intent. *M.M. v. Fargo Pub. Sch. Dist. No. 1*, 2010 ND 102, ¶ 12, 783 N.W.2d 806. We have said the legislature is presumed to know the courts' construction of its statutes and the legislature's failure to amend the statute indicates legislative acquiescence to that construction. *See Effertz v. N.D. Workers Comp. Bureau*, 525 N.W.2d 691, 693 (N.D. 1994) (citing *N. States Power Co. v. Bd. of R.R. Comm'rs*, 298 N.W. 423, 430 (N.D. 1941)); *see also Skinner v. Am. State Bank*, 189 N.W.2d 665, 670 (N.D. 1971). "Where courts of this State have construed [a] statute and such construction is supported by the long acquiescence on the part of the legislative assembly and by the failure of the assembly to amend the law, it will be presumed that such interpretation of the statute is in accordance with legislative intent." *Lamb v. State Bd. of Law Examiners*, 2010 ND 11, ¶ 10, 777 N.W.2d 343 (quoting *City of Bismarck v. Uhden*, 513 N.W.2d 373, 376 (N.D. 1994)).

[¶32] Ordinarily, we would presume the legislature was aware of this Court's opinion in *State v. Gefroh*, 458 N.W.2d 479 (N.D. 1990), and our interpretation of what is now N.D.C.C. § 12.1-32-07(6), including our determination that the legislature impliedly adopted our construction of N.D.C.C. §§ 12-53-11 and

12

12.1-32-07. The legislature has had more than thirty years to correct any error in our interpretation of what was then N.D.C.C. § 12.1-32-07(4) in *Gefroh*. But they did not amend the relevant provisions of the statute until 2021. The legislature's acquiescence is evidence *Gefroh* is consistent with legislative intent.

[¶33] Here, however, we need not rely solely on the mere passage of time to confirm legislative acquiescence. In 2021, the legislature amended N.D.C.C. § 12.1-32-07(6) to remove the sentence stating, "In the case of suspended execution of sentence, the court may revoke the probation and cause the defendant to suffer the penalty of the sentence previously imposed upon the defendant." 2021 N.D. Sess. Laws ch. 111. This is the language Justice Jensen's special concurrence to *State v. Dubois*, 2019 ND 284, ¶¶ 25-26, 936 N.W.2d 380, stated was unambiguous and created an exception to the general rule of allowing the court to revoke probation and impose any sentence that was initially available. The majority states that this language unambiguously limits the general rule and that continuing to construe the statute as we had since *Gefroh* presumes the legislature performed an idle act by amending N.D.C.C. § 12.1-32-07 to include this language.

[¶34] This Court has recognized "subsequent amendments to a statute may be used in ascertaining the legislative intent of an earlier version of the statute." *Effertz*, 525 N.W.2d at 693. The legislative history for the 2021 amendment confirms that this Court's prior construction of the statute in *Gefroh* was consistent with the legislative intent. Senator Jim Roers introduced the bill amending N.D.C.C. § 12.1-32-07(6) in the House Judiciary Committee, and stated his understanding was that judges have always had the discretion to resentence defendants who violate terms of probation or have probation revoked, a recent Supreme Court case challenged that understanding, and the bill seeks to protect how the system has always operated in the past. *Hearing on S.B. 2204 Before the House Judiciary Comm.*, 67th N.D. Legis. Sess. (Mar. 16, 2021) (introduction by Sen. Jim Roers) http://legis.nd.gov/assembly/67-2021/bill-video/bv2204.html. Robert Vallie, Cass County State's Attorney's Office, testified that it has been long understood that a judge could resentence

a defendant up to the maximum sentence available when the court revokes the defendant's probation, including when a suspended sentence was initially ordered. *Hearing on S.B. 2204 Before the House Judiciary Comm.*, 67th N.D. Legis. Sess. (Mar. 16, 2021) (written testimony of Robert Vallie, Cass County Assistant State's Attorney). He testified the legislation came about as a result of the concurring opinion in *Dubois*, stating:

> The legislation before the Committee comes from the North Dakota Supreme Court case *State v. Dubois* from 2019. . . . [T]he concurring opinion laid out a notice to evaluate whether the statute supports what has been the long-standing understanding of a judge's authority and the need to consider a change. In review of the opinion, with the structure of the statute, a change is needed to ensure our Criminal Justice system operates the way we expect.

> As proposed, this bill would remove the last sentence of this statute to remove the issue pertaining to the suspended sentence outlined in *Dubois*. With this modification, judges will continue to be able to re-sentence up [to] the maximum allowed under law, if a judge were to believe such a sentence was necessary.

*Id.* He testified the bill protects the long-standing understanding of this statute. *Id.* The legislature amended the statute in response to the *Dubois* concurrence.

[¶35] Because the legislature's acquiescence and immediate response to the prior *Dubois* appeal confirm *Gefroh* is consistent with legislative intent, I would not overrule *Gefroh* and *State v. Lindgren*, 483 N.W.2d 777, 779 (N.D. 1992). The district court did not impose an illegal sentence by sentencing Dubois to five years' imprisonment. I would affirm the order denying Dubois' application for post-conviction relief.

[¶36]  Gerald W. VandeWalle
       Lisa Fair McEvers

14